(Decided 12th January, 1894.)

---

LEWIS N. HOPKINS, Collector of State and City taxes of Baltimore City *vs.* BAKER BROS. & COMPANY.

*Taxation—Situs of Stock in Trade—Partnership property Assessable to Firm.*

The stock in trade of a partnership doing business in a city, which remains there until it is sold in the course of business, is "goods and chattels permanently located," within the meaning of section 51 of Article 3 of the Constitution which provides that such goods and chattels shall be taxed in the city or county where they are so located.

The stock in trade of a partnership is properly assessed to the firm instead of to the individual members thereof according to their respective interests, where the law provides for the assessment of goods at the place where they are permanently located.

APPEAL from the Baltimore City Court.

NOTE. The taxation of partnership property is the subject of a note to the above case in 22 *L. R. A.*, 477.

The case is stated in the opinion of the Court.

*Exception.*—The case was submitted to the Court below without a jury, on an agreed statement of facts, the right of appeal being reserved. The plaintiff offered the following prayer:

That under the agreed statement of facts in this case the plaintiff is entitled to recover $1,394.95, with interest from the 31st of January, 1893, and costs.

The defendants offered the following prayers:

1. That under the agreed statement of facts in this case the whole of said stock is not properly taxable in said city, and the plaintiff is not entitled to recover the whole amount of taxes claimed from the defendants, but only the amount of taxes due for the horses assessed at $750, and for the interest of Charles E. Baker in the whole stock of the partnership.

2. That there is no evidence in the case legally sufficient to entitle the plaintiff to recover either the State or city taxes for the year 1892, upon the interest of Charles J. Baker and William Baker, Jr., in the stock of the firm of Baker Bros. and Company.

The Court, (WRIGHT, J.,) rejected the plaintiff's prayer, and granted the prayers of the defendants. The plaintiff excepted. The verdict and judgment were for the plaintiff for $432.38, with interest and costs. This being less than the amount claimed the plaintiff appealed.

The cause was argued before BRYAN, FOWLER, PAGE, BOYD, and BRISCOE, J.

*Thomas G. Hayes, City Counsellor,* for the appellant.

The legal title to the stock in question is in the firm and not in the individual members of the firm, and is hence taxable to the firm and not to the individual members of the firm at their respective places of residence.

It has been expressly held that it was the holder of the legal estate that was taxable and not those who had the beneficial interest in the property. *Latrobe vs. Mayor, &c., of Baltimore*, 19 *Md.*, 13.

The Supreme Court of the United States, in speaking of the title to partnership property, said: "It has repeatedly been determined, both in the British and American Courts, that the property or effects of a partnership belong to the firm and not to the partners, each of whom is entitled only to a share of what remains after payment of the partnership debts and a settlement of accounts between partners." *Bank vs. Carrollton Railroad*, 11 *Wall.*, 628. See also, *Case vs. Beauregard*, 99 *U. S.*, 124; *State vs. Parker*, 34 *N. J. Law*, 73; *Fairbanks & Co. vs. Kittredge, et al.*, 24 *Ver.*, 14.

Goods and chattels are permanently located in Baltimore City when actually situated within its corporate limits, with no location elsewhere and not there temporarily, *in transitu*, or on storage or deposit for temporary purposes.

The Legislature had the power to say that the assessable value of the glass found in possession of appellees on the day of the assessment should be ascertained by the ascertainment of the average value of that glass as stock in trade for the year the taxes were levied. *State vs. Sterling*, 20 *Md.*, 502.

The words "permanently located," as used in Article 3, section 51, of the Constitution, cannot be held to mean a location lasting forever. No such meaning is ever given to these words. The definition of "permanent" by the weight of judicial decisions does not embrace the idea of absolute perpetuity, but rather, when used in connection with location, of indefinite duration. *Texas, &c., Railway Co. vs. Marshall*, 136 *U. S.*, 393; *Mead vs. Ballard*, 7 *Wall.*, 290; *Bassett vs. Johnson*, 2 *N. J. Eq.*, 155; *Lord vs. Goldberg*, 81 *Cal.*, 596; *Perry vs.*

*Wheeler, &c.,* 12 *Bush,* (*Ky.,*) 541; *Elderton vs. Emmens,* 4 *C. B.,* 479; *Newton vs. Commissioners,* 100 *U. S.,* 562; *Harris vs. Shaw, et al.,* 13 *Ill.,* 465.

"Permanently located" is opposed to a temporary location or *in transitu.* When applied to goods and chattels they must have no actual location elsewhere. 8 *So. Rep.,* 496, (*Ala.*)

The Supreme Court of Pennsylvania, in speaking of the rule that the *situs* of personal property is the domicile of the owner, said: "This rule is doubtless true as to intangible property, such as bonds, mortgages and other evidences of debt. But the better opinion seems to be that it does not hold in the case of visible tangible personal property permanently located in another State. In such cases it is taxable within the jurisdiction where found, and is exempt at the domicile of the owner. Goods and chattels, horses and cattle, and other movable property of a tangible or visible character, are liable to taxation in the jurisdiction of the State where the same are and are ordinarily kept, irrespective of the residence or domicile of the owner." *Commonwealth vs. American Dredging Co.,* 122 *Pa. St.,* 386.

"Property of a partnership is with propriety taxed where the business is carried on." *Cooley on Taxation,* 374; *Mayor, &c., of Mobile vs. Baldwin,* 57 *Ala.,* 68; *Irvin vs. N. O., St. L. & C. R. R. Co.,* 94 *Ill.,* 111; *St. Louis vs. The Ferry Company,* 11 *Wall.,* 423.

The Court of Appeals of Maryland has given a meaning and interpretation to the Act of 1865, chap. 119, and has emphatically said that "actually situated" is equivalent to "permanently located." *Insurance Co. vs. Mayor & C. C. of Baltimore,* 23 *Md.,* 311.

Legal protection and taxation being reciprocal, it is but just and fair that the stock in question, which receives its sole protection from Baltimore City, should pay to that city its just proportion of taxes for this pro-

tection. *Commonwealth vs. American Dredging Co.*, 122 *Pa. St.*, 386.

"Protection is the legal and constitutional consideration of taxes." *Mayor, &c., of Mobile vs. Baldwin*, 57 *Ala.*, 68; *Pullman's Palace Car Co. vs. Pennsylvania*, 141 *U. S.*, 18.

*David Stewart*, (with whom was *D. G. McIntosh*, on the brief,) for the appellees.

The case is not affected by the fact that the property is partnership property. *Lindley on Partnership*, (2nd *Amer. Ed.*,) 110, 111; *Bates on Partnership*, sec. 175; *Cooley on Taxation*, (1st Ed.,) 271.

"The interest of each partner in the partnership, is his personal property. The practical difficulty of ascertaining the value of the interest of each partner has not been deemed by our laws an insuperable objection to its being assessed to him separately." *Bemis and others vs. Board of Aldermen of the City of Boston*, 14 *Allen*, 366; See *Fairbanks & Co. vs. Kittredge, et al.*, 24 *Vt.*, 10, 13.

"A firm has no domicile distinct from the joint domicile of the partners. If all the partners reside in the same taxing district, it may not, perhaps, be inaccurate to speak of the domicile of the firm as lying there, if the term is used in connection with the subject of taxation. But where the partners live in different taxing districts, the place of business does not fix the place of taxation for all the personalty of the firm, wherever situate." *Taylor vs. Love*, 43 *N. J. Law*, 142, 143. See *State vs. Parker*, 34 *N. J. Law*, 71, 73; *Lanier vs. The Mayor and Council of Macon*, 59 *Ga.*, 187.

In Kansas, "corporations, companies and firms" are by statute taxed as distinct persons. *Swallow vs. Thomas*, 15 *Kan.*, 66, 68.

The power of the Legislature which, in most States, can separate for the purposes of taxation the *situs* of the

personal property from the domicile of its owner (*Tappan vs. Merchants' National Bank*, 19 *Wall.*, 490,) is limited in Maryland by the Constitution; and under this limitation even special statutes for the taxation of partnerships as individuals, such as exist in other States, would be invalid.

The stock in trade of a merchant is not "goods and chattels permanently located." The stock in trade may consist of goods and chattels, but none of these goods and chattels are permanently located anywhere. They are kept to be sold, to be moved away. The stock in trade is permanent, but its constituent parts are not. The stock in trade is an abstraction, a generalization, a name, it is not in itself goods and chattels. That is to say, the "goods and chattels" which a merchant has on hand to sell are not permanently in his possession. They thus differ from his office furniture, his safe, his horses and wagons. For the very reason that they are not permanent property they are called to distinguish them, his stock in trade. The merchant always has a stock in trade; it is a part of his business capital, and has a permanent location in his business, and if the law said "*personal property* permanently located" instead of "*goods* and *chattels* permanently located" it might be claimed that, as all a merchant's capital, (represented by his account books, his bank books, his stock in trade,) is in a sense personal property permanently located in his place of business, it might be taxed there. But capital is not "goods and chattels;" certificates of deposit are not "goods and chattels;" notes and accounts are not "goods and chattels," and a stock in trade, as such, is not "goods and chattels." The Constitution does not speak of such *personal property* as may be permanently located, but singles out "goods and chattels," by which is meant visible, tangible, movable things. *Kirkland, Chase & Co. vs. Brune, et al.*, 31 *Gratt.*, 131. And in

Hopkins *vs.* Baker.

this case the visible, tangible, movable pieces of glass, have no permanent location whatever.

If a ship kept by a merchant at his dock sails away to return again, it has in a sense a permanent home there. There is far more permanency of location in this than in a box of glass which is intended to be sold and sent away never to return. And yet a ship is not "goods and chattels permanently located." *Hooper vs. Mayor,* &c., 12 *Md.,* 464, 472. So with cars and engines passing through Union depot. *Phila., Wilm. & Balto. R. R. Co. vs. Appeal Tax Court of Baltimore City,* 50 *Md.,* 397, 415. A similar decision was rendered about Pullman cars. *Appeal Tax Court of Balto. City vs. Pullman Palace Car Co.,* 50 *Md.,* 452, 456. It is no argument to urge the equity of business men paying their taxes in their place of business. *Hooper vs. Mayor, &c., of Baltimore,* 12 *Md.,* 464, 472.

Boyd, J., delivered the opinion of the Court.

This case was tried in the Baltimore City Court on an agreed statement of facts. The agreement shows that Charles J. Baker, William Baker, Jr., and Charles E. Baker, compose the firm of Baker Bros. and Company; that Charles E. Baker is a resident of Baltimore City, and the other two members of the firm are residents of Baltimore County; that Charles J. Baker has a four-tenths interest, and the other two have each a three-tenths interest, in the firm. It is admitted that the place of business of the firm is on Charles street, in Baltimore City, at which place is kept the stock of the partnership, of an average value of $80,000.00; that the firm has been assessed by the Appeal Tax Court of Baltimore City for $80,000.00 on their stock, and $750.00 on their horses used in their business, and taxed $1,393.95 for State and City taxes for 1892.

The appellees declined to pay those taxes, but were willing to pay on the horses, which they keep permanently in the city, and on the three-tenths interest of Charles E. Baker.   The question raised by the agreed statement of facts and the prayers was whether taxes could be levied and collected from the whole stock of the firm, or whether only the three-tenths interest of Charles E. Baker therein was liable.

The Court below decided that the plaintiff was only entitled to recover the amount of taxes due for the horses and for the interest of Charles E. Baker in the whole stock of the partnership.   A judgment was entered accordingly for $432.38 with interest and costs, and the plaintiff appealed to this Court.

The appellees rely upon section 51 of Article 3 of the Constitution of Maryland, which provides that:   "The personal property of residents of this State shall be subject to taxation in the county, or city, where the resident *bona fide* resides for the greater part of the year for which the tax may or shall be levied, and not elsewhere, except goods and chattels permanently located, which shall be taxed in the city or county where they are so located." The principal question to be determined is the meaning of the term "permanently located," as used in that section of the Constitution, it being contended by the appellees that the goods and chattels composing their stock in trade are not "permanently located" in the City of Baltimore.

Article 15 of the Declaration of Rights asserts that "every person in the State, or person holding property therein, ought to contribute his proportion of public taxes for the support of the government, according to his actual worth in real or personal property."

Taking this in connection with the provision of the Constitution above quoted, it is clear that it was contemplated by the framers of the Constitution that per-

sonal property such as that referred to in this case should be taxed somewhere. If a resident of Baltimore County has personal property, carriage, and horses, for example, which go in and out of the city, without having any permanent abiding place in the city, he should pay taxes on the same in Baltimore County. The object of the constitutional provision was to insure as far as possible taxation once, and to prevent it more than once on the same property.

As the *situs* of personal property is ordinarily the place of residence of the owner, the Constitution provides that personal property should be taxed where the owner *bona fide* resides for the greater part of the year; but, as that provision alone might work great hardship on the county or city where goods and chattels of the owner are permanently located, the exception was made. Goods and chattels permanently located at the residence of the owner are to be taxed there, so what might be called his "floating" goods and chattels are taxed at the place of his residence, because they have no actual *situs* of their own, and hence that of their owner is adopted, but such goods and chattels as compose the stock in trade of the appellees are not carried backwards and forwards between Baltimore County, or some other county and the City of Baltimore. As long as they are the property of the appellees they are *located* in Baltimore City, and they are as *"permanently located"* there as such goods and chattels can be any where. They are not manufactured or purchased to be kept as long as they remain in existence. The separate articles constituting the stock may continue the property of the appellees for a day, a week, a month, a year, or longer, but until they are sold they remain permanently in Baltimore, and are not moved from place to place. That is clearly what is meant by "permanently located"—not that the goods and chattels must remain until they are

worn out, or indefinitely. The agreed statement of facts shows that the average value of the stock carried by the appellees is $80,000.00, and that they were assessed for that amount. In other words, the appellees keep *constantly* on hand at their place of business in Baltimore City $80,000.00 worth of goods and chattels in the shape of glass, etc. It may be true that $5,000.00 worth of glass may be sold and shipped away to-day, and another lot of glass worth $5,000.00 may be substituted for it to-day or to-morrow, but the stock of goods and chattels of the value of $80,000.00 is kept on hand—is *permanently located* at their place of business. It is not necessary to itemize the stock in trade when it is assessed. The assessors examine the stock, the goods and chattels, and fix their value for taxation, just as they do the furniture or other tangible personal property at the respective residences of the appellees. If the contention of the appellees is to prevail then merchandise cannot be taxed anywhere. No merchant expects to keep his stock *permanently* on hand in the sense that term is used by the learned counsel for the appellees.

He expects to sell as soon as he can receive his price, and as he sells he replenishes his stock. The articles are changing from day to day, but the stock, which represents the aggregate of the goods and chattels, remains about the same. Yet can it be claimed that a merchant who resides and carries on his business in Baltimore is not to be taxed for his stock in trade? A reasonable construction must be given the constitutional provision, and we must bear in mind the object in taxing goods and chattels permanently located in the city or county where they are so located.

If the position of the appellees is correct, it is possible to have hundreds of thousands of dollars, probably millions, of tangible personal property, goods and chattels, within the City of Baltimore, having the benefit of

its police and fire protection from year to year, and yet not contribute one dollar to the support of the police or fire departments.   Merchants transacting business in Cumberland, Hagerstown, Frederick, Annapolis and other incorporated cities and towns in the counties could escape all municipal taxes on their stock in trade by living beyond the corporate limits of those cities and towns, whilst those living within such cities and towns must pay the municipal as well as the State and county taxes on their stock in trade.   Such a construction of the law would encourage fraud.   A resident of a remote county might carry a large stock in trade in Baltimore City, or on the Eastern Shore, without the knowledge of the authorities of the county where he resided.

We recognize fully the force of the argument of counsel for the appellees that property cannot be taxed simply because it may seem inequitable to permit it to escape taxation.   But when we are called upon to construe statutes or the Constitution on this subject, it is our duty, in seeking the true interpretation of language used, to place a reasonable construction upon it, and to bear in mind the fact that our Constitution aimed to require all persons to bear their just share of the burden of taxation.

This case differs wholly from those of *Hooper vs. Mayor, &c., of Baltimore,* 12 *Md.,* 464, and *Phila., Wilm. and Balto. Railroad Co. vs. Appeal Tax Court of Baltimore City,* 50 *Md.,* 397, cited by the appellees. Hooper was a resident of Baltimore County, and this Court decided that his ship was not permanently located *"within the State,"* and hence it could not be taxed by Baltimore City.   The statute then in force required property owned by residents of this State, *and not permanently located elsewhere within the State,* to be assessed to the owner in the county or city where he resided. The ship was registered in the custom house at Balti-

more, but under the law of Congress existing at that time she could not be registered elsewhere whilst the owner resided in Baltimore County, as Baltimore City was the port of entry of the district which embraced Baltimore County; and hence the fact that she sailed from the port of Baltimore City to foreign ports did not *permanently* locate her there if, in the language of the Court in that case, "a vessel built for and actually employed in foreign trade, can be said to be permanently located anywhere." The case in 50 *Md.*, 397, *supra*, determined that the rolling stock of the company could not be assessed in Baltimore City, as it was not permanently located there, within the meaning of the general assessment Act of 1876, which had a provision very similar to that in the Constitution. The Court decided that Baltimore City was not the home office of the corporation. It said on page 416: "The engines and cars of the appellants have no abiding place or permanent location in this State, so as to become incorporated with the other permanent property of the State, and are only brought here transiently when employed in the operation of the road." The Court uses as equivalent terms "abiding place" and "permanent location." In this case the goods and chattels have an "abiding place" in Baltimore City, and are "incorporated with the other permanent property" of the city. They are not simply *in transitu* or temporarily located; and it is not a strained construction of the language of the Constitution to determine, as we do, that the stock in trade of the appellees is "permanently located" in the City of Baltimore, and hence liable to taxation there.

We do not deem it necessary to determine whether this stock could be taxed in Baltimore City by reason of the fact that it is owned by a firm transacting its business there. We are of the opinion, however, that it is perfectly proper to assess the property to the firm,

instead of to the individual members thereof according to their respective interests.

There are many reasons why this should be so. The interest of the partners may vary from time to time, and should it be necessary at any time to sell the property for taxes, it might be very inconvenient, and cause serious delay in the collection of taxes, if the interests of partners must be determined as they would likely have to be before any one would purchase.

As partnership assets are liable for partnership debts before they are for the debts of the individual members of the firm, it would be proper to levy the taxes against the firm. Assessing the firm instead of the individual members, will save much inconvenience to the authorities, and do no injustice to anyone.

It follows from what we have said that the judgment below must be reversed.

*Judgment reversed, and*
*new trial awarded.*

(Decided 12th January, 1894.)