STATE v. FRANKLIN SUGAR–REFINING COMPANY.

February 7, 1900.

Nos. 11,940—(215).

**Taxation of Merchandise upon Track—Merchant.**

Certified facts examined, and *held*:

1. Merchandise shipped into this state, and held in cars on the tracks of the common carrier for the purpose of distribution to parties who had purchased the same previously, although consigned to the shipper for convenience, does not make the shipper a merchant, within the provisions of G. S. 1894, § 1528.

2. Personal property so shipped, and in process of distribution, not subject to taxation under provisions of G. S. 1894, § 1508.

In proceedings in the district court for Hennepin county to enforce delinquent personal property taxes for 1897, Franklin Sugar-Refining Company interposed an answer. The matter was tried before Brooks, J., who found in favor of defendant and, at the request of the state, certified to the supreme court certain points for its decision. Affirmed.

*Louis A. Reed,* County Attorney, *J. T. Hutchinson* and *C. S. Jelley,* for the State.

*Russell, Cray & Jamison,* for defendant.

LEWIS, J.

This is a tax case certified to this court under G. S. 1894, § 1589.

The facts are as follows: The Franklin Sugar-Refining Company of Pennsylvania, a wholesale dealer in sugar, has had since 1891 an arrangement with one Earl of Minneapolis, in this state, by

which Earl was accustomed to solicit offers from purchasers of sugar, which offers he would submit to the company for acceptance or refusal. If offers were accepted, the company so notified Earl, and shipped the sugar to Minneapolis in one of two ways: Either, first, direct to the purchaser; or, second, consigned to the company itself, or its order. The refining company had an arrangement with the common carrier that it might rebill any portion or all of any sugar so shipped to Minneapolis, and consigned to itself or its order, to any other northwestern point within or without the state of Minnesota, and divert such sugar thither at a through rate between Philadelphia and such final point of destination. This arrangement was for the purpose of saving the difference between a through rate to the final point and the rate from Philadelphia to Minneapolis plus the local rate from Minneapolis to such final point. It was the practice of the refining company, when sugar was consigned to itself or its order, at Minneapolis, to send the bill of lading, with the shipper's indorsement thereon, to said Earl, who filed the same in the office of the common carrier at Minneapolis. Said Earl then gave orders on said carriers to such dealers as had given said orders, which orders such consignments were intended to fill. As such orders were filled by the delivery of the sugar, said Earl notified said shipper by wire, and statements were rendered to said purchasers by said shipper, and payment was made direct by such buyers to the shipper. Said Earl was a general merchandise broker, engaged in the same business with other shippers than said refining company. No sugar was shipped into this state by said refining company except to fill and satisfy orders previously received and accepted in the manner stated. Said Earl had no authority to sell sugar for said refining company, or to accept any offer by him secured, or to do anything on behalf of said company except as above stated, and other brokers in Minneapolis during said time had like authority. Said refining company had at no time any warehouse, salesroom, or other place in which sugar was kept in this state, neither did it have any office or place of business in said state, but all sugar sold by it in this state was

delivered to the purchasers direct from the cars of the common carrier.

On May 1, 1897, there was located in cars upon railroad tracks of the common carrier transporting the same in Minneapolis a large quantity of sugar, all of which had been shipped by said refining company upon orders received from said Earl, and which had been consigned to itself or order, and the bill of lading, duly indorsed by said shipper, was held by Earl. On said day all of said sugar was assessed by the assessor of Minnesota, and on account thereof a tax of $512.32 was levied against said refining company. Said sugar had been shipped to fill orders received from Earl in March, 1897, in the manner stated, part of it awaiting delivery to merchants in Minnesota, and part destined to points outside this state; and a portion of said sugar was after said May 1 carried out of this state, and the remainder was delivered to the parties ordering the same at Minneapolis. Said sugar was not sent into this state for sale, except as aforesaid. Said sugar was contained in fourteen cars, and said shipper had at said time orders for forty-five car loads in Minneapolis and other northwestern points. All of said sugar so assessed could have been used and forwarded to points outside this state, to fill orders then existing.

Upon these findings of fact, the court below ordered judgment that the proceedings to enforce the collection of the said tax levied against said company should be dismissed.

Four different questions have been certified to this court for its opinion. They present theoretical and abstract problems, rather than the essential, concrete question involved in the transaction. But, since the question of the validity of the tax is presented by the findings of fact and conclusions of law found by the court below, we will consider the questions submitted sufficient to command a review of the only practical question in the case.

The county attorney claims that the tax is legal because it appears from the findings of fact that no particular part of the sugar was destined to any particular buyer, and there had been no delivery to such buyers, it having been delivered to the refining company at Minneapolis, and not being in transitu; hence it was taxable under G. S. 1894, § 1508, having acquired a situs in this state.

79 M.—9

But this section is qualified by section 1528, which defines "a merchant" as follows:

"Whoever owns or has in his possession, or subject to his control, any goods, merchandise, grain or produce of any kind, or other personal property, within this state, with authority to sell the same, which has been purchased either in or out of this state with a view to being sold at an advanced price or profit, or which has been consigned to him, from any place out of this state, for the purpose of being sold at any place within this state, shall be held to be a merchant. * * * No consignee shall be required to list for taxation the value of any property the product of this state, nor the value of any property consigned to him from any other place for the sole purpose of being stored or forwarded, if he has no interest in such property, nor any profit to be derived from its sale."

The purpose of this statute is to permit the forwarding of merchandise to the proper destination when it has been sold before it enters the state. McCormick v. Fitch, 14 Minn. 185 (252); State v. William Deering & Co., 56 Minn. 24, 57 N. W. 313. The consignee named in the bill of lading in this case was the shipper, hence the nominal consignee had an interest in the sugar; but the shipper was named as consignee at Minneapolis as a matter of convenience, and had no interest in the goods, within the meaning of this section. If the transaction amounted to an actual sale previously made, and the sugar was en route to fill the orders, it is of no importance whether the bill of lading was made out in the name of the shipper, the broker, or the buyers. Neither does it matter if for convenience the sugar was shipped in bulk to Minneapolis, with no intention that any particular car or amount should reach any particular purchaser. Nor is it material that part of the sugar was destined to points outside, and part of it to points within, the state. For the same reason the question of technical possession at the time of the levy is not decisive. All these matters were proper to be taken into consideration by the court below in determining whether the sugar was held in Minneapolis on track for sale, or whether it had been sold previous to its entering the state, and was in Minneapolis at that time for the purpose of being distributed to the proper purchasers. The court below has passed upon this question, and settled it adversely to appellant.

It follows that the order of the court below must be affirmed. So ordered.