## LOUISIANA IRON & SUPPLY CO. v. JOLLY, Tax Assessor, et al.

No. 26183.   Oct. 22, 1935.

Rehearing Denied Nov. 19, 1935.

Stephen A. George, for plaintiff in error.

W. W. Potter, County Atty., for defendants in error.

PER CURIAM. In this appeal the plaintiff in error was the plaintiff in the trial court and the defendants in error were the defendants in the trial court, and in this opinion they will be referred to as plaintiff and defendants, respectively.

It appears from the statement of the case by the attorney for the plaintiff and the attorney for the defendants, and from the findings of fact of the court below, that in the latter part of 1934, the plaintiff was a Louisiana corporation, having its office and place of business in Shreveport, in that state, and that the plaintiff purchased, at that time, from the Sinclair-Prairie Pipe Line Company certain pipe lines, and it caused said pipe lines to be removed from the ground and the pipe to be disjointed for the purpose of shipping it to East Texas. During the latter part of December, 1934, the plaintiff caused the pipe to be transported by trucks from the oil fields to the town of Healdton, Okla., and unloaded on the freight yards of the Atchison, Topeka

& Santa Fe Railway Company for immediate shipment to the East Texas oil fields. The plaintiff had crews of workmen employed day and night straightening said pipe preparatory to loading the same on freight cars. A large part of the pipe, which constituted the pipe line purchased in the ground, had actually been shipped out of Healdton before the 1st day of January, 1935. The pipe was being loaded and shipped as fast as time and facilities for loading would permit. Approximately half of the entire pipe line had been loaded and shipped before January 1, 1935, but it was impossible to load and ship the rest before that time because the facilities were inadequate.

The tax assessor of Carter county, Okla., learned that this pipe was being shipped under these circumstances, and at about 9 o'clock on the morning of January 1, 1935, the defendant W. A. Jolly, as tax assessor of Carter county, Okla., appeared at the railway station at Healdton and demanded the payment of an ad valorem tax on all pipe that had not been shipped up to that date. The tax assessor returned to his office at Ardmore, Okla., made an assessment against said pipe, and delivered the same to the county treasurer of Carter county, who issued his tax warrant and placed same in the hands of the sheriff of said county, who caused said warrant to be levied upon the unshipped pipe on the morning of January 2, 1935.

Thereafter, the plaintiff filed a suit in the district court of Carter county, Okla., against the defendants to restrain and enjoin them from interfering with the transportation and shipment of said pipe to East Texas and to restrain and enjoin the defendants from advertising and selling said pipe for the satisfaction of the taxes.

A temporary injunction was granted, but on final trial the temporary injunction was dissolved and a judgment and decree rendered for the defendants, and this is an appeal from said judgment and decree.

The plaintiff sets out eleven assignments of error, but in its argument in this case groups them all in the following three general propositions:

"1. The property involved in this action was not subject to local taxation in Carter county, Okla., for the year 1935, for the reason that same was in transit in interstate commerce; and the attempted imposition of the tax in question is an undue burden upon interstate commerce, in violation of the Commerce Clause of the Federal Constitution.

"2. The property involved in this action was only temporarily located in the town of Healdton, Okla., and until such time as it could be loaded on cars for further shipment in interstate commerce to East Texas; and said property did not acquire and did not have a taxable situs in the town of Healdton or in Carter county, Okla., at the time of the attempted levy and assessment of said tax.

"3. The enforced payment of the tax claimed in this action would deprive this plaintiff of the equal protection of the law, and would deprive plaintiff of its property without due process of law."

Under the first head, plaintiff contends that the pipe, on January 1, 1935, was in transit in interstate commerce, and, therefore, could not be subjected to taxation by the officials of Carter county for the year 1935.

It is a well-established doctrine that a tax on property in transit from one state to another is invalid because an illegal burden on interstate commerce, and one of the principal questions involved in this case is whether the transit had begun at the time of the acts complained of, or whether the pipe had been delivered to the carrier for transportation.

We think the rule is well stated by the Supreme Court of Indiana in Board of Commissioners of Brown County v. Standard Oil Co., 103 Ind. 302, as follows:

"Where personal property is collected at any point, by any means of transportation, and is merely awaiting the necessary facilities for further transportation, it will be deemed to be in transitu while so detained; but where it is awaiting indefinitely the owner's pleasure, or the rise of markets, or is awaiting or undergoing a further process of manufacturing, it will acquire an actual situs at such point, rendering it there subject to taxation."

On this point we call attention to Ogilvie v. Crawford County, 7 Fed. 745, and Blount v. Munroe, 60 Ga. 61. In the case at bar, the trial court held that the pipe involved in this suit had not been entered in interstate commerce when the assessment was made, and that the pipe was therefore subject to local taxation for the year 1935. The trial court found that said pipe had not been delivered to the railway company, but was in possession of the plaintiff at the time of the assessment, and that the railway company had not issued a bill of lading covering the particular pipe assessed. It seems to have been admitted in the trial that the railway company did not issue bills

of lading in any case until the cargo was loaded, and, further, that the railway company does not load a cargo, such as the pipe in this case, on its cars for shipment, but the shipper is required to load the same. The plaintiff contends that the only possession it had of such pipe was such as was necessary for the loading of said pipe on the freight cars and straightening the crooked joints necessary to load the same. The record shows that the pipe was on the company's yard, and was being loaded as fast as possible on cars placed on the side track of the railway company for the purpose.

From a careful reading of the record in this case, and after careful examination of the law, we are constrained to believe, and hold that, at the time the assessment was made on the pipe, the whole quantity of pipe involved in the case was, in fact and and in law, in transitu. Approximately half of it had already been shipped out and arrangements had been made with the carrier for cars to take the rest. The contract between the plaintiff and the carrier for the shipping of the pipe had already been made, and the plaintiff, under the arrangement, had nothing else to do but actually load this remaining pipe from the carrier's premises on its freight cars, and the only possession the plaintiff had at the time was such as was necessary for the loading of the pipe and the straightening of the crooked joints necessary to load the same. This shipping arrangement was one entire transaction, and this shipping contract was not a separable one, and the actual loading of the pipe onto the carrier's freight cars was more than half completed.

Bearing on this point further we call attention to State v. Hammermill Paper Co., 149 Minn. 414, 184 N. W. 182; Champlain Realty Co. v. Town of Brattleboro, 260 U. S. 366, 67 L. Ed. 309, 25 A. L. R. 1195.

The trial court apparently attached importance to the fact that no bill of lading had been issued by the carrier to the plaintiff covering the pipe sought to be attached, but we do not believe that that is a factual element in this case that is at all decisive. In the case of State of Minnesota v. George Blasius, 290 U. S. 1-12, 78 L. Ed. 131, it is held as follows:

"If the interstate movement has begun, it may be regarded as continuing so as to maintain the immunity of the property from state taxation, despite temporary interruptions due to the necessities of the journey or for the purpose of safety and convenience in the course of the movement. * * * Formalities, such as the forms of billing and mere changes in the method of transportation, do not affect the continuity of the transit. The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied."

As bearing upon plaintiff's first proposition, the following cases may prove illuminating: Champlain Realty Co. v. Town of Brattleboro, 260 U. S. 366, 67 L. Ed. 309, 25 A. L. R. 1195; General Oil Co. v. Crain, 209 U. S. 211, 52 L. Ed. 754; Susquehanna Coal Co. v. Mayor and Council of City of South Amboy, 57 L. Ed. 1015; Kelly v. Rhoades, 47 L. Ed. 359; Brown v. Houston, 29 L. Ed. 257; Prairie Oil & Gas Co. v. Ehrhardt (Ill.) 91 N. E. 680; Gulf Refining Co. of Louisiana v. Phillips, 5 Fed. (2d) 514, 11 Fed (2d) 967; Railroad Commission v. Worthington, 56 L. Ed. 1004; Missouri, Kansas & Texas Railway Co. v. Ashinger, 63 Okla. 120, 162 P. 814; State ex rel. Hirschi, Co. Atty., et al. v. Empire Oil & Refining Co., 171 Okla. 138, 42 P. (2d) 127.

"It now seems to be definitely settled by the Supreme Court of the United States that the essential nature of a movement of freight, and not the form of a bill of lading under which it moves, determines the character of the commerce, and, where it is the intention of the parties that such freight is to be exported to a foreign country, the shipment is one in foreign commerce, notwithstanding the initial movement is under a bill of lading local upon its face. McFaddin Rice Mill. Co. v. Texas & N. O. R. Co. (Tex. Civ. App.) 277 S. W. 191.

"The question as to whether a shipment is inter or intra state 'must be determined by the essential character of the commerce,' which is governed by the intent of the parties controlling the movement of the traffic; and this must be ascertained from all of the pertinent facts, circumstances, and conditions, and 'not by mere billing or forms of contract.'" Memphis Merchants Exch. v. Illinois C. R. Co., 43 I. C. C. 378.

In this case the defendants, among other things, insist in their brief that in an equitable action the finding of the trial court should be sustained unless it appears that its findings are clearly against the weight of the evidence, and cite numerous authorities to support the doctrine that in an equitable action findings of the trial court will not be disturbed unless against the clear weight of the evidence. This is an elementary principle of the law, and is never dis-

582

puted in this state. However, this doctrine, it seems to us, had no application to the case now under consideration, because in the case before us there is no dispute as to the matters of fact, but the controversy arises over the application of the law to the facts; so we do not deem it necessary to discuss this proposition advanced by the defendants.

An examination of the brief of the defendants will disclose that they depend largely upon the case of Edward S. Coe v. Town of Errol, 116 U. S. 517, 29 L. Ed. 715. This is a leading case upon the questions therein decided and has been so considered since the decision was rendered in 1886. So far as our research shows, the doctrines announced in that case have been followed since the decision was rendered. However, in the case now before us for disposal, the question is whether the Errol Case is similar to this case, and, therefore, controlling.

In the Errol Case the facts were that Edward S. Coe and others, residents of Maine and Massachusetts, owned a large number of spruce logs that had been drawn during the winter before from a certain tract in New Hampshire and placed in Clear stream and on the banks thereof, in the town of Errol, N. H., to be later floated down the Androscoggin river to the state of Maine, there to be manufactured and sold, and the timber, after having been cut in Maine, had lain over in Errol since the spring or summer before the taxation, according to the custom.

In the Errol Case the logs in controversy had lain over at the point of concentration for about a year previous to the date of assessment, where they were to remain until it should meet the convenience of the owner to send them to their destination, and the logs were assessed at the usual time and in the usual manner. In that case the facts would seem to justify the conclusion reached that the logs, though intended for shipment outside the state at some future time, had in fact come to rest at Errol and had acquired a taxable situs there. In the case now under consideration the court found that the plaintiff intended to ship said property immediately, or as soon as it could reasonably be loaded on the cars of the railroad company, and the record shows that the necessary cars for the transportation of the pipe to east Texas had already been furnished by the railroad company under its contract of carriage, and that crews of workmen were working day and night loading the pipe on the cars, and that approximately one-half of the mass of pipe former-

ly constituting the pipe line had already been loaded and shipped out before the 1st day of January, 1935.

The inevitable conclusion is forced upon us that the pipe sought to be taxed in this action had never come to rest; that it had never obtained a taxable situs in Carter county, Okla., for the year 1935, and further that it had been entered with the carrier, and the contract of shipment had already gone into effect, and was largely, if not entirely, performed by both the plaintiff and the carrier.

It is unnecessary to discuss the other questions raised in this appeal.

This case is reversed, with directions that a permanent injunction be granted as prayed for by the plaintiff.

The Supreme Court acknowledges the aid of District Judge H. H. Montgomery, who assisted in the preparation of this opinion. The district judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion was adopted by this court.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.