## STATE DEPARTMENT OF ASSESSMENTS AND TAXATION *v.* BENDIX CORPORATION

[No. 35, September Term, 1973.]

*Decided October 11, 1973.*

The cause was argued before MURPHY, C. J., and BARNES,

McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*K. Donald Proctor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *E. Stephen Derby, Assistant Attorney General,* on the brief, for appellant.

*Edward Pierson,* with whom were *Pierson & Pierson* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

There are two principal questions presented to us for resolution in this appeal; *i.e.,* whether the Maryland Tax Court erred in passing its order of December 14, 1972 reversing the assessment by the State Department of Assessments and Taxation (Department) of completed automobile radios in the Broening Highway plant of The Bendix Corporation (Bendix), appellee, in Baltimore City for taxation in Baltimore City for the taxable years 1970-1971 and 1971-1972 and holding that (1) Article II, Section 39 (b) of the Baltimore City Charter (1964 revision, as amended to January, 1969) was in force during the periods of the assessments in question and (2) the completed automobile radios were stored or deposited at the Broening Highway plant for temporary purposes and hence within the exemption contained in Section 39 (b) of Article II.

There were two cases presented and decided by the Maryland Tax Court at the same time and considered together in that court's opinion filed December 14, 1972. The first case, No. 353, involved the taxable year 1970-1971 and $1,414,840.00 of personal property, with an assessment of $848,900.00. The second case, No. 368, involved the taxable year 1971-1972 and $1,849,095.00 of personal property, with an assessment of $1,109,457.00. The Tax Court found the relevant facts—amply supported by competent evidence— as follows:

"The radios were manufactured for installation in

Ford, Chrysler and some foreign makes, pursuant to long term contracts. They were not manufactured for Petitioner's own account or to be held for sale to the general public. The radios were shipped, in the case of Ford and Chrysler, to various automobile manufacturing plants outside the State of Maryland, to be installed in the autos or distributed to dealers, while radios for the foreign automobiles were shipped directly to the distributors for installation in the foreign automobiles after they were imported into the United States. After the radios were assembled, they were packaged in bulk and transported by truck to the Shipping Department at Broening Highway, where they were held pending release upon shipping instructions from the automobile manufacturers. Sometimes the finished automobile radios were shipped directly to the Assembly Plants by truck load lots, and on other occasions they were repackaged with installation kits and shipped to the automobile manufacturers or to distributors for redistribution. No sales were made directly to dealers or automobile owners. The testimony showed that the period of time the finished radios remained in the Broening Highway Plant awaiting shipment was usually about one to two weeks."

Article II, Section 39 of the Baltimore City Charter provides in relevant part that the City is empowered:

"(a) To assess for tax purposes, levy annually and collect taxes upon every description of property found within the corporate limits of the City which the City is authorized by law to levy tax upon for the purpose of defraying the expenses of the municipal government, whether the owners thereof reside within or without the limits of the City.

(b) ... provided, that no authority is given by this subsection (39) to impose taxes on any property

which is now or may hereafter be exempted from taxation by any general or special act of the General Assembly of Maryland, *nor upon any property which may be stored or deposited in the City for temporary purposes."* (Emphasis supplied)

Subsection (c) of Section 39 authorizes the City to provide by general ordinance for a manufacturer's exemption of tools, etc.

### (1)

The Department first contends that the provision of Subsection (b) upon which Bendix relies for exemption of the radios as stored or deposited in the City "for temporary purposes" has been repealed by implication by the passage of Chapter 27 of the Acts of 1951, now appearing as Section 40 of Article II of the Baltimore City Charter, formerly being Subsection $33^1/_2$ of Section 6 of the Charter, and providing in relevant part, that the City is empowered:

"(a) To have and exercise, within the limits of Baltimore City, in addition to any and all taxing powers heretofore granted by the General Assembly of Maryland to the Mayor and City Council of Baltimore, the power to tax to the same extent as the State of Maryland has or could exercise said power within the limits of Baltimore City as a part of its general taxing powers; . . . and from time to time to grant exemptions and to modify or repeal existing or future exemptions. . . ."

Subsection (b) of Section 40 then sets forth 15 specific taxes which the City "shall not have the power to impose" but none of these is relevant to the instant case. It is then provided in Subsections (c) and (d):

"(c) Subject to the limitations herein provided, the powers herein granted to the Mayor and City Council of Baltimore shall be in addition to any powers which it now has and nothing herein shall

be construed in any way to impair or diminish the powers now possessed. . . ."

"(d) . . . [A]ll other laws or parts of laws, inconsistent with the provisions of this Subsection (40) [formerly Subsection $33^{1}/2$] be and they are hereby repealed to the extent of any such inconsistency."

See our opinion in *Kimball-Tyler Co. v. City of Baltimore*, 214 Md. 86, 133 A. 2d 433 (1957) for the history of this legislation. In *Kimball-Tyler*, the Court sustained an ordinance of the City repealing the manufacturer's exemption on the theory that this exemption had theretofore been granted by a public local law which the City was empowered to repeal under the provisions of Chapter 27 of the Acts of 1951.

Section 2 of Art. XI-A of the Constitution of Maryland in regard to "local legislation" provides:

"The General Assembly at its first session after the adoption of this amendment shall by public general law provide a grant of express powers for such County or Counties as may thereafter form a charter under the provisions of this Article. Such express powers granted to the Counties and the powers heretofore granted to the City of Baltimore, as set forth in Article 4, Section 6, Public Local Laws of Maryland, shall not be enlarged or extended by any charter formed under the provisions of this Article, but such powers may be extended, modified, amended or repealed by the General Assembly."

Judge Prescott, for the Court in *Armco Steel Corp. v. State Department of Assessments and Taxation*, 236 Md. 168, 181, 202 A. 2d 741, 748-49 (1964), quoted with approval from *Kimball-Tyler, supra*:

"It should be noted that under Section 2, Article 11A of the Maryland Constitution, the City has no authority at all to legislate on the subject of its

express powers, contained in Section 6 of the Charter. Only the General Assembly can alter those provisions. . . ."

The Act of 1951, Chapter 27 was an amendment to the Baltimore City Charter giving the *power* to the City to tax within the limits of the City to the same extent as the State of Maryland could exercise such power *and* from *time to time* to grant exemptions *and* to *modify or repeal existing* or future *exemptions.* It was obviously the intent of the General Assembly to give the City the power by ordinance to modify or repeal existing exemptions by *future* action. The statute was not intended to be self-executing, so that the existing exemptions from taxation continued until the City modified or repealed them, assuming, of course, that the City had the constitutional power to modify or repeal them. Both the General Assembly and the City itself apparently considered the exemption from City taxation of property stored or deposited in the City for temporary purposes as continuing and not repealed by the Act of 1951, Chapter 27, inasmuch as in amending what is now Subsection 39 of Article II of the City Charter (then Subsection (33)) by the Acts of 1959, Chapter 387 [1] and by Section 7 of Chapter 825 of the Acts of 1963 the exemption is continued in the amendatory legislation in the same language — "nor upon any property which may be stored or deposited in the City for temporary purposes." Most importantly the revised City Charter of 1964 contains Section 39 *as amended* by Chapter 825 of the Acts of 1963 and this revised charter was approved by the electorate of Baltimore City in the election held in November, 1964. It is clear, therefore, that neither the General Assembly, nor the City itself, considered the

---

1. The Court in the Armco Steel Corporation case indicated that it was not the legislative intent in Chapter 387 of the Acts of 1959 to give precedence to then Subsection 33 over then Subsection 33$^1$/₂. See 236 Md. at 178-79, 202 A. 2d at 747. There was, of course, no holding that the exemption continued in the Act of 1959, Chapter 387 in regard to the exemption of property stored or deposited in the City for temporary purposes was repealed by implication by Chapter 27 of the Acts of 1951. Indeed in both Armco Steel and Kimball-Tyler, *supra,* ordinances of the City purportedly enacted pursuant to the Act of 1951, Chapter 27 were included.

exemption repealed or modified by the Act of 1951, Chapter 27.

Then too, an exemption originally established by the Acts of 1862, Chapter 251, clarified in Chapter 119 of the Acts of 1865 and continued since 1865 in the identical form would not likely be thought to be repealed by implication, particularly in view of the policy of the law against repeals by implication. *See City of Bowie v. Washington Suburban Sanitary Commission*, 249 Md. 611, 618, 241 A. 2d 396, 400 (1968).[2]

---

**2.** Chapter 119 of the Acts of 1865, effective March 20, 1865, amended Chapter 251 of the Acts of 1862 which conferred certain powers on the City in relation to the levying and collecting of taxes for the purpose of defraying the expenses of the municipal government and the title to Chapter 119 states that it was enacted "so as more clearly to exempt certain property from taxation for such purposes." It states:

"Sec. 1. The Mayor and City Council of Baltimore are hereby empowered to levy and collect taxes upon every description of property found within the corporate limits of said City, which they are now authorized by law to levy taxes upon for the purpose of defraying the expenses of the municipal government, whether the owner thereof reside within or without the limits of said corporation; *provided,* that no stocks, bonds, mortgages, certificates or other evidence of indebtedness of any bank or other corporation situated within the limits of said City, which are owned or held by persons residing without such limits, shall be subject to taxation for the purpose above set forth; *and, provided further,* that no authority is given by this Act to impose taxes on any property which is now or may hereafter be exempted from taxation by any general or special act of the General Assembly of Maryland, nor upon any property which may be stored or deposited in the City of Baltimore for temporary purposes."

Chapter 251 of the Acts of 1862, effective March 10, 1862 provided that the City could levy and collect taxes upon "every description of property found within the corporate limits of said city, which they are now authorized by law to levy and collect for the purpose of defraying the expenses of the municipal government, and that no property found within the corporate limits shall be exempted from taxation, in consequence of the owners thereof residing without the limits of said corporation . . . ." Then followed the proviso that no authority was given to impose taxes upon property "now or hereafter" exempted from taxation by the General Assembly. The final proviso was that —

". . . Nothing herein contained shall subject to taxation for the purposes herein set forth any property elsewhere in the State of Maryland, or which may be stored in the city of Baltimore for temporary purposes."

It will be observed that the last clause was "clarified" by the addition of the words "or deposited" after the word "stored." The principal clarification

We perceive no inconsistency between the provisions of Sections 39 and 40 of Article II of the present City Charter in regard to this exemption. Section 39 continues the exemption for property stored or deposited in the City for temporary purposes; Section 40, at the most, purports to give the power to the City to modify or repeal this provision, but there has been no modification, amendment or repeal of this exemption by the City.[3] Until that is done in a constitutional and lawful manner, there is no inconsistency or repugnancy between the two sections.

Bendix contends that, in any event, an attempt by the City to tax personal property not "permanently located" in the City may well contravene the provisions of Art. III, Section 51 of the Maryland Constitution and the holdings of several Maryland cases involving attempted taxation of personal property not "permanently located" in the taxing jurisdiction such as *Appeal Tax Court v. Pullman Palace Car Co.*, 50 Md. 452 (1879), *Philadelphia W & B R.R. Co. v. Appeal Tax Court*, 50 Md. 397 (1879) and *Hooper v. Mayor & City Council of Baltimore*, 12 Md. 464 (1859). There is much force in this contention, but in view of our holding that a proper construction of the applicable statutes indicates that the exemption is in full force and effect, it is neither necessary nor appropriate that we pass upon any possible constitutional issues and we decline to do this.

(2)

The Department next contends that the radios are not within the purview of the exemption because, it says, they are not stored or delivered in the City for "temporary purposes." Rather, it urges, that the radios are, in effect,

---

of Chapter 251 of the Acts of 1867 by Chapter 119 of the Acts of 1865 was in regard to making clear that "stocks, bonds, mortgages, certificates or other evidences of indebtedness of any bank or other corporation" situated in the City but owned by persons residing without the City limits were exempt from City taxation.

**3.** In view of the inclusion of Section 39 as amended and reenacted by the Act of 1963, Chapter 825, in the Revised City Charter of 1964, it may well require a charter amendment to modify, amend or repeal this exemption. This question, however, is not before us and we make no decision in regard to it.

part of an inventory having a permanent situs in the City for purposes of taxation and within the ambit of the holdings of our predecessors in *Hopkins v. Baker Bros. & Co.*, 78 Md. 363, 28 A. 284, 22 L.R.A. 477 (1894) and *Myers v. Baltimore County*, 83 Md. 385, 35 A. 144, 34 L.R.A. 309, 55 Am. St. Rep. 349 (1896). Both *Hopkins* and *Myers* involved the taxation of inventories as "permanently located" within the respective taxing jurisdictions. In *Hopkins*, the inventory was glass, with an average value of $80,000.00, held for sale as and when orders were received from customers. When the glass inventory was reduced by sales, other glass was added to maintain the inventory valued at $80,000.00. In *Myers*, the inventory was of cattle. The taxpayers received shipments of cattle, mostly from the western states, every Wednesday at their stockyards in Baltimore County which averaged $20,000.00 in value and remained on hand for one or two days of each week, the taxpayers seeking to sell them as soon as possible to save the expense of maintaining the cattle. In both *Hopkins* and *Myers*, it was held that the taxing of the personal property was proper in the jurisdiction where the respective inventories were located.

In the present case, however, the facts are quite different from the facts in *Hopkins* and *Myers*. In this case, the radios were not at the Broening Highway plant to remain there indefinitely until sale and were not available as stock in trade. To the contrary, they had been manufactured and were being shipped under the contracts Bendix had with its customers and were merely awaiting further shipment to the customer who had already contracted for their purchase. They were not held awaiting a decision by Bendix for their disposition. Their disposition had been determined before they were manufactured. Their brief stay — a week or two — was of definite and not of indefinite duration. In our opinion, the Maryland Tax Court did not err in concluding that the radios were "stored or deposited in the City for temporary purposes" and hence within the purview of the exemption. This conclusion is supported by *Champlain Realty Co. v. Town of Brattleboro*, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A.L.R. 1195 (1922); *Cumberland Pipe*

*Line Co. v. Commonwealth,* 258 Ky. 90, 79 S.W.2d 366 (1935); *Louisiana Iron and Supply Co. v. Jolly,* 174 Okla. 579, 51 P. 2d 280 (1935); *State v. Hammermill Paper Co.,* 149 Minn. 414, 184 N. W. 182 (1921). *See also* 84 C.J.S. *Taxation* § 120 at 244-45 (1954) and Powell, *Taxation of Things in Transit,* 7 Va. L. Rev. 167, 245, 429, 497 (1920-21).

The Department urges that at least the language of the exemption is ambiguous and that the alleged administrative practice of the Department to permit taxation of the radios as stock in trade should be given effect by us, as we indicated in *Macke Co. v. State Department of Assessments & Taxation,* 264 Md. 121, 135, 285 A. 2d 593, 600 (1972). *See also Swarthmore Co. v. Kaestner,* 258 Md. 517, 528-29, 266 A. 2d 341, 346-47 (1970) and cases therein cited. Alas for the Department's contention in this regard, we consider the language clear and unambiguous so that this rule of construction does not apply. We also have grave doubts that the testimony offered by the Department established a "long standing administrative interpretation of the language" in question as contrasted with the personal opinion of the witness for the Department in regard to how the statutory language should be applied.

Bendix also urges upon us that, in any event, the operations at the Broening Highway plant were a part of its manufacturing process so as to entitle it to exemption under the "manufacturer's exemption" and also, alternatively, as "manufactured products in the hands of the manufacturers" even though not manufactured in the City. These are interesting questions, but in view of our decision sustaining the exemption on the basis upon which the Maryland Tax Court predicated its grant of the exemption, as above set forth, we do not decide these additional questions.

> *Order of December 14, 1972 affirmed, the appellant to pay the costs.*