# STATE v. BURLINGTON LUMBER COMPANY.[1]

June 28, 1912.

Nos. 17,504—(1).

**Findings sustained by evidence.**

Trial court's findings of fact upon the issues made by a personal property-tax delinquent list for a certain year, and a taxpayer's answer thereto, attacking an assessment of certain logs claimed to be nonassessable as being subjects of interstate commerce, *held* sustained by the evidence.

**Assessment of logs for taxation — interstate commerce.**

Certain logs assessed for taxes after being brailed by a boom company, and while waiting for delivery to a steamer to be towed to another state, *held* not to have commenced their interstate transit until after such assessment, on May first of a certain year, and hence that such logs were subject to the said assessment.

In proceedings in the district court for Dakota county to enforce the collection of certain personal property taxes assessed for the year

[1] Reported in 136 N. W. 1033.

1905, defendant filed its answer. The matter was tried before Johnson, J., who made findings and conclusions of law as set forth in the opinion. From the judgment in favor of plaintiff for $228.38 entered pursuant to the findings, defendant appealed. Affirmed.

*Clapp & Macartney,* for appellant.

*P. H. O'Keefe,* for respondent.

PHILIP E. BROWN, J.

This is an appeal from a judgment for certain taxes assessed against the defendant, the Burlington Lumber Company, upon four certain "brails" of logs. The taxes were assessed by the assessor of the village of Lilly Dale, Dakota county, May 1, 1905, and were returned delinquent April 6, 1906. Thereafter the defendant duly filed its answer to the delinquent list, admitting therein that the logs in question were situated in Lilly Dale on May 1, 1905, and were then owned by. it, but attacking the assessment on the ground that at the time the same was made the logs were in the course of interstate transit, and hence not subject to taxation in the state; the substance and effect of such answer being that the said logs were originally banked by the defendant on the Mississippi river and its tributaries above the city of Brainerd, during the logging season of 1904, destined for the defendant's mills at Burlington, Iowa, and that they were in continuous course of transit from the time they were started down the river and its tributaries until they reached Burlington, having been stopped at Lilly Dale merely for the purpose of segregating them from the logs of other owners and of forming them into "brails" or rafts. The issues made by such answer were tried to the court without a jury, and the court made findings. Thereafter, on the defendant's motion, the court made additional or amended findings, at the same time refusing to make certain other additional findings requested by the defendant, and ordered judgment to be entered, from which judgment so entered this appeal was taken.

The facts, as found by the court and briefly stated, are as follows:

The defendant is an Iowa corporation, with place of business at Burlington, and having no place of business, sawmill, or resident

officers in Minnesota, but an agent, as required by the statute con-
cerning foreign corporations, residing at St. Paul; such being its
status during the whole period of time involved in this case. The de-
fendant, during the logging season of 1903 and 1904, cut and banked
on the Mississippi river and its tributaries, above Brainerd, in this
state, a large quantity of logs, including those contained in brails
numbered 43, 49, 76, and 82, the same which are involved in this
case. The said logs were so cut and banked with the intention on
the defendant's part of driving them down the river to its sawmill at
Burlington, Iowa; all of such logs being cut within this state for the
purpose of being exported as aforesaid. During 1904 the logs were
placed in the river and its tributaries and driven to or towards Min-
neapolis. There they arrived intermingled with logs of other owners,
were stopped by the Mississippi & Rum River Boom Company, sepa-
rated from such other logs by the said boom company, and were
again turned into the river and driven down the same until they
arrived at the booms of the St. Paul Boom Company, at St. Paul,
some time prior to May 1, 1905, the precise time of their arrival
not appearing.

At this point the St. Paul Boom Company took possession of them
for the defendant, and made them up into brails, numbered 43, 49,
76, and 82; the logs being scaled by the surveyor general of logs as
they were being so brailed. Thereafter the said boom company,
still acting for the defendant, tied the said logs so brailed to the
shore at Lilly Dale, where they remained in the possession of the
said boom company, acting for the defendant, from some time prior
to May 1, 1905, until a short time thereafter. The brails numbered
43 and 49 were, by the said boom company, delivered to boat for
towage May 2, 1905, and brails numbered 76 and 82 were so de-
livered May 6, 1905; the logs in all four of the said brails having,
until such delivery, been in the possession of the said boom company,
holding the same for the defendant, for the purpose of assorting,
rafting, and delivering them to a carrier for transportation down
the Mississippi to Burlington. Brails 43 and 76 were received at
Burlington August 12, 1905, brail 49 June 15, 1905, and brail 82
May 24, 1905; but prior thereto, while they were in the possession

of the St. Paul Boom Company, at Lilly Dale, the logs contained in the said brails were assessed by the village assessor, on May 1, 1905.

The court further found that both of the said boom companies were Minnesota corporations, having express power and authority to handle, assort, and raft logs being floated down the Mississippi river; "that it does not appear from the evidence in what manner the said logs were driven or towed to Minneapolis, or to the booms of the St. Paul Boom Company, nor at what time they were so driven or towed from the place where they were banked to Minneapolis or to St. Paul; neither does it appear by what process of rafting nor in what manner they were transported down the river from Lilly Dale to Burlington, Iowa, except that it does appear from the evidence, and the court finds as a fact, that brails numbered 43 and 49 were by the said St. Paul Boom Company delivered to a certain steamer Mars, May 2, 1905, and that brails numbered 76 and 82 were by said St. Paul Boom Company delivered to said steamer May 6, 1905."

As a conclusion of law the court found that the plaintiff was entitled to judgment against the defendant for the amount of the said taxes and penalty, with costs and disbursements.

The appellant has four assignments of error, the first of which is divided into six subdivisions, numbered accordingly, and all thereof being directed to the court's refusal to make certain requested findings; the second, to alleged errors in the findings made; and the third and fourth being practically upon the court's conclusion of law.

We have carefully examined the evidence, and find no error, either in the court's findings of fact or in its refusal to find. The defendant's request for the making of additional findings, adverted to in the first five subdivisions of its first assignment of error, is predicated almost entirely upon the affidavit of its president, which was made substantially on information and belief, and which was received in evidence on the trial by consent. The court was justified in refusing to accept the statements therein contained as true, for they did not even purport to have been made by one having personal knowledge of

the alleged facts related, but simply declared the statements to be true on the deponent's information and belief. The material portions of the sixth subdivision of the first assignment were incorporated in the findings made. The basis of the material portions of the defendant's second assignment of error is the same affidavit of its president which we have referred to above. The statements therein made on information and belief have no probative force or effect.

The defendant's third and fourth assignments of error and its contention thereunder, to the effect that the logs were nontaxable because they had already begun their interstate transit when they were assessed, presents the only difficult and remaining question in the case. Counsel are agreed, and we think correctly, that the rule is that, when a commodity has begun to move as an article of trade in a continuous route or journey from one state to another, commerce in such commodity has commenced, and the same is not taxable in the first-mentioned state. In the discussion of the defendant's contention in this regard it should be remembered that a Federal question is involved, concerning which we are bound by the decisions of the Federal Supreme Court, and that we have already held that the trial court's findings of fact are sustained by the evidence, and hence the ultimate question to be determined is whether the trial court's conclusion of law is sustained by its findings of fact.

Had the logs here involved begun their interstate transit, within the contemplation of the authorities on such subject, when they were assessed? The difficulty here presented does not grow out of any uncertainty as to the general principle involved. This principle is well settled, and is likewise clearly propounded in Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. ed. 715, declared in State v. Taber Lumber Co. 101 Minn. 186, 112 N. W. 214, 13 L.R.A.(N.S.) 800, to be the leading case on this subject; the trans-shipment in both of these cases being of logs.

"Such goods," said the court, in the Errol case, speaking generally of goods intended for interstate transportation, "do not cease to be part of the general mass of property in the state, subject, as such, to its jurisdiction and to taxation in the usual way, until they have been shipped or entered with a common carrier for transportation to an-

other state, or have been started upon such transportation in a continuous route or journey. * * * Whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced."

Taking the rule, as thus pronounced, literally and without quali-·fication, any movement, whether by hand, sleds, road vehicles, water craft, floating or railroad, might be deemed the beginning of the journey. In the case of logs and timber the mere dragging of a single log over the snow, from the place where the tree is felled to the bank of the stream in which it is to be floated in the following spring, might be deemed the beginning of a movement to another state. But the rule, as propounded in the Errol case, contemplates something more than movements incident to the gathering together of the component parts of the final package or conglomerate mass which is finally to be shipped or transported.

"But this movement does not begin until the articles have been shipped or started for transportation from the one state to the other," continued the court, in the Errol case, after stating the rule as above recited. "The carrying of them in carts or other vehicles, or even floating them, to the depot where the journey is to commence, is no part of that journey. That is all preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation. Until actually launched on its way to another state, or committed to a common carrier for transportation to such state, its destination is not fixed and certain."

Undoubtedly the component parts of many kinds of packages or conglomerate masses which are transported to another state might severally be made integers of interstate commerce. Nor do we mean to intimate that logs, even a single log, might not constitute such an integer, though the transportation be entirely by floating. We express no opinion upon that point. But where the transaction involves a gathering together of separate articles and their aggregation into a package or mass for the final journey, it would seem, at least as a general rule, that the movement incident to such assembling of the component parts of such final package or mass should be held to be a matter of mere preparation for shipment. Certainly the ultimate

destination of the final package or mass, when it begins to move, is more definitely fixed and certain than before the aggregation of its component parts has been completed.

In view, therefore, of the court's findings that it did not appear in what manner the logs here involved were driven or towed to Minneapolis, or to the booms of the St. Paul Boom Company, at which latter place they were brailed and finally delivered to the steamer to be towed to Burlington, we are constrained to hold that the interstate transit did not begin, so far as appears from the record, until such delivery to the steamer was made.

It is not necessary to determine whether this steamer, Mars, was a common carrier. It is sufficient to say that the boom of the St. Paul Boom Company appears to have been the place of assembling the logs for their final preparation for shipment, as distinguished from a mere way or transfer station on a continuous, unbroken journey; and, such being the case, it must be held that the interstate transit did not begin until the deliveries to the steamer on May 2 and May 6, respectively.

We have considered, in this connection, that the Mississippi river is navigable, for floatage, from the point where the logs entered it, above Brainerd, to the point where they were brailed; that there was no change of ownership during the journey down the river to the boom of the St. Paul Boom Company, nor at such boom, the function of the boom company being merely to brail the logs and hold them for the defendant and to deliver them to the steamer; that the steamer was in the defendant's sole employ; and that the logs, first and last, belonged to the defendant, and were intended for its mills at Burlington. Such considerations are not, however, conclusive of the question as to when the interstate journey began (State v. Taber Lumber Co. supra), and to our mind they are heavily outweighed by the other circumstances of the case.

In view of the burden that was upon the defendant to show that the logs were not taxable (State v. Backus-Brooks Co. 102 Minn. 50, 112 N. W. 863; 3 Dunnell, Minn. Dig. § 9270), we are not prepared to say that the court's finding was unwarranted under R. L. 1905, § 822.

Judgment affirmed.