## STATE v. HUGHES BROS. TIMBER COMPANY.[1]

April 17, 1925.

No. 24,445.

**When pulpwood destined for another state is taxable in Minnesota.**

1. Pulpwood cut during the winter in the adjacent forests of Cook county, Minnesota, afloat in the Pigeon river on May 1 and on its way to the booms in Pigeon bay on Lake Superior, there to await the opening of navigation and the arrival of boats to transport it to its final destination in another state, had not begun its final journey to the latter point so as to become an article of interstate commerce to the extent that it was not taxable as of May 1 in Minnesota.

**Payment of one-fourth of price did not render seller immune from taxation.**

2. Under such circumstances an advance of $3 a cord by the purchaser with a simultaneous passing of the title did not so far deprive the seller of ownership as to make him immune from taxation on account of the goods in question, for he was still interested to the extent that three-fourths of the purchase price remained to be paid and the last half was not payable or determinable until the wood was "finally delivered, scaled, measured and accepted."

**Interest due from contesting taxpayer from date of order for judgment.**

3. A taxpayer against whom has been assessed an excessive personal property tax, and who by interposing an answer and litigating the issue has the tax reduced, is liable only for interest from the date of the order for judgment. Not having opportunity earlier to pay the correct amount, there has been no default in payment and consequently no justification for the imposition of the statutory interest and penalties.

1. See Commerce, 12 C. J. p. 100, § 130.
2. See Taxation, 37 Cyc. p. 792.
3. See Taxation, 37 Cyc. p. 1166.

Proceeding to collect personal property taxes for the year 1922 in the county of Cook. The case was tried before Hughes, J., who reduced the assessment. From the judgment, defendant appealed. Modified.

*Washburn, Bailey & Mitchell,* for appellant.

*H. H. Phelps* and *C. S. Murphy,* County Attorney, for respondent.

[1]Reported in 203 N. W. 436.

STONE, J.

Defendant appeals from a judgment confirming a 1922 personal property tax on account of 8,367 cords of pulpwood, the assessment having been made in the town of Hovland, Cook county. The tax was resisted solely by the claim that the pulpwood, before May 1, 1922, had entered the channels of interstate commerce on its way to a destination in another state.

On October 31, 1921, defendant contracted with the Central Paper Company of Muskegon, Michigan, to deliver 10,000 cords of pulpwood "during the season of 1922, delivery to be made "over rail of vessel" and stowed at Pigeon bay, on boats to be furnished by the purchaser. The contract obligated the paper company to advance $3 per cord during the winter months upon progress estimates of quantities at the river landings, where the wood was to be provisionally inspected and measured. Title to wood on which the advance was made was thereupon to pass and the wood to be branded accordingly at that time. Another advance of $3 per cord was required upon arrival of the wood in the booms on Pigeon bay. The balance was not payable nor determinable until the wood was "finally scaled and measured, delivered and accepted" at Muskegon.

Pigeon river is on the international boundary between Cook county and the Province of Ontario and flows into Lake Superior at Pigeon bay. The pulpwood had been cut in nearby forests of Cook county and on April 29, 1922, was all piled on the ice and banks of the Swamp river, a Minnesota tributary of the Pigeon. By May 1, it was all afloat and on its way to the booms in the bay, there to await the opening of navigation and the arrival of the boats on which to make the final journey to Muskegon.

1. We are thus required to pass upon a Federal question and are controlled by Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. ed. 715, followed in State v. Taber Lumber Co. 101 Minn. 186, 112 N. W. 214, 13 L. R. A. (N. S.) 800; State v. Burlington Lumber Co. 118 Minn. 329, 136 N. W. 1033, and State v. Hammermill Paper Co. 149 Minn. 414, 184 N. W. 182. The attempt to tax this pulpwood is in no way referable to its intended shipment out of the state, but was in the usual manner in which all such personal property is

taxed under our statute. In that situation, Coe v. Errol, 116 U. S. 517, 528, 529, as we understand it, sustains the tax and might even though the assessment had been made on the pulpwood after it had reached and while still in the booms at Pigeon bay. It would then have been "deposited or stored at the place of entrepot for future exportation" and the taxability of such property is "plain," if it is "not singled out to be assessed by itself in an unusual and exceptional manner because of its destination." Such a tax is valid for it affects what "is still a part of the general mass of property in the state."

That character is not lost, under the principle of Coe v. Errol, while the goods are being carried in "carts or other vehicles", nor even while being floated "to the depot where the journey is to commence. * * * That is all preliminary work, * * * only an interior movement of the property, entirely within the state, for the purpose, it is true, but only for the purpose, of putting it into a course of exportation; it is no part of the exportation itself."

So it was held in the controlling case that sawlogs partially prepared for export from New Hampshire and which had been floated to and deposited at the place or port of shipment, within that state, were liable to be taxed therein. See also Johnson v. Bradley-Watkins Tie Co. 120 Ky. 136, 85 S. W. 726, where it was held that ties then recently cut in Kentucky and piled on a river bank for the purpose when a boat was secured of being shipped out of the state, were taxable in Kentucky.

Sawlogs were again involved in Diamond Match Co. v. Ontonagon, 188 U. S. 82, 96, 23 Sup. Ct. 266, 47 L. ed. 394. The facts were somewhat stronger for taxation there than they are here. The controlling principles, however, were the same and Coe v. Errol was applied as the ruling case. It was considered to have been established that, for the purpose of taxation of personal property, particularly its own products, intended for exportation out of the state, "there may be an interior movement * * * which does not constitute interstate commerce, though property come from or be destined to another state. In the one case, though it have not reached its place of disembarkation or delivery, it may be taxed. * * *

In the other case, until it be shipped or started on its final journey, it may be taxed." In that case the tax was imposed under a Michigan statute providing for the taxation of forest products of that state in transit to a point outside the state and giving them a situs for taxation at the place nearest to the last boom or sorting gap of the stream in which they would be last floated during such transit. The tax now involved is imposed under a similar statute. Section 2005, G. S. 1923, provides that "logs and timber cut from lands within, and designed to be transported out of, this state shall be assessed and taxed in the taxing district where found on May 1." We sustain the tax because, while they were in process of transportation, the movement was an interior one and in preparation for and not a part of the final and interstate movement.

Reference to our own decisions, none having been brought to our attention other than those cited, fortifies our conclusion. For example, the sawlogs involved in State v. Taber Lumber Co. were not considered to have entered the channels of interstate commerce simply because they were going through a sluicing operation intended to get them to the hoist which would put them on their final railroad journey out of the state. The logs involved in State v. Burlington Lumber Co. occupied, relatively, about the same position this pulpwood would have been in at the booms in Pigeon bay. They were well on their way—in fact brailed in the Mississippi below St. Paul and actually awaiting the boats to take them on their final journey out of the state. They were held taxable. The Hammermill Paper Company case is to the same effect, although for the most part an opposite result was reached. The bulk of the wood there involved was already in the hands of an interstate carrier and actually billed out of the state under interstate rates. It was in a very different situation from that now under consideration and was held not taxable. Involved in that case also was a quantity of wood "hauled in on sleds" and stored with the other, but, unlike the latter, its final journey out of the state had not begun and it was held taxable.

The facts in Kelly v. Rhoads, 188 U. S. 1, 23 Sup. Ct. 259, 47 L. ed. 359, were very different from those now in question. The state of Wyoming attempted to tax a drove of sheep bound overland from

Utah to Nebraska by a direct route across Wyoming. They were in interstate commerce and that character attended them across the Nebraska boundary. The bare statement of the case shows how different it is from this one.

It is not easy to determine in every case just where a movement of goods intended for interstate or foreign commerce takes on that character. That inherent difficulty is especially apparent from a comparison of Coe v. Errol, supra, involving the right of a state to tax such property, or rather to tax the owner on account of it, with the cases involving an attempt of the exporting state to burden the movement of such goods by discriminatory rates for transportation or by direct regulation of an interstate carrier.

The latter type of cases is illustrated by Southern Pac. Ter. Co. v. Interstate Com. Comm. 219 U. S. 498, 31 Sup. Ct. 279, 55 L. ed. 310; Ohio R. Comm. v. Worthington, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. ed. 1004; Texas & N. O. R. Co. v. Sabine Tram Co. 227 U. S. 111, 33 Sup. Ct. 229, 57 L. ed. 442, and Louisiana R. Comm. v. Texas & Pac. Ry. Co. 229 U. S. 336, 33 Sup. Ct. 837, 57 L. ed. 1215. In those cases what was considered the initial movement of interstate or foreign commerce was very similar to that which in Coe v. Errol was held to be interior, preliminary to and no part of the interstate movement. A possible distinction is that in the last cases cited the exercise of state authority was considered a direct interference with and burden upon the movement of goods in interstate commerce, whereas in the tax cases there was no attempt whatsoever to interfere with or burden the movement of goods but only an effort to tax property owners because of their ownership of goods.

It is not, primarily, a purpose of the commerce clause to prevent state taxation of any property. "A tax is not obnoxious to the commerce clause merely because imposed upon property used in interstate commerce." Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 120, 41 Sup. Ct. 45, 65 L. ed. 165. The tax in such a case is invalid only when it becomes a burden upon Federal commerce or an intrusion upon the domain of national regulation. A transportation rate or a regulation of an interstate carrier frequently has a direct and immediate burdening or regulating effect upon

commerce itself, the movement of persons or goods, not possessed by a tax against the owners of the subjects or instruments of commerce.

2. The fact that the Michigan purchaser, by advancing $3 a cord on the purchase price, acquired the property in the wood, as provided by the contract, is not overlooked. Even if the transfer of ownership had been absolute it would not have deprived the state, nothing else appearing, of the right to tax. It could not make interstate commerce of a movement which otherwise did not have that character. In this connection, we have been attentive also to the argument that, aside from the interstate commerce question, the defendant had so far parted with the property that it could not be taxed therefor on May 1, 1922. We hold to the contrary. There had been no delivery to the purchaser. The cash advance under the contract did not deprive defendants of the control and right to possession of the pulpwood. Three-fourths of the purchase price remained to be paid. Another $3 per cord was payable upon arrival of the wood in the booms at Pigeon bay. The balance, $6 per cord, was not payable or determinable until final measurement and acceptance at Muskegon. These circumstances make it clear that the defendants had not so far parted with their property as to be immune from taxation on its account. A tax on property is not defeated merely by selling it for future delivery and procuring an advance on the purchase price.

3. The original assessment was on 10,000 cords but in fact there were only 8,367 cords. The tax was reduced accordingly by the decision below, but, notwithstanding, the statutory interest and penalties were sustained as to the reduced amount. In that we think there was error. Under the principle of County of Redwood v. Winona & St. Peter Land Co. 40 Minn. 512, 41 N. W. 465, 42 N. W. 473, neither interest nor penalties can be imposed upon the taxpayer until he defaults in payment. Defendants had no opportunity to pay the correct amount of the tax until it was determined. Until then they were not in default, so all they can be held for is interest on the tax from the time it was so determined.

The argument contra insists that the failure of defendants to list their pulpwood for taxation was such a default as to justify the imposition of both interest and penalties. We do not agree, for notwithstanding their failure in that respect it was the duty of the assessor not to fix the tax at an excessive amount. When he did so, there was no obligation upon defendants to pay the excessive tax. We are now concerned with default in payment and there was no default until the correct amount was ascertained and that was not until the filing of the order for judgment.

The judgment should be modified by striking therefrom the provisions allowing interest and penalties and substituting therefor an allowance of interest only on the tax as corrected and from the date of the order for judgment. When so modified, the judgment will stand affirmed. There will be no allowance of statutory costs.

Remanded for a modification of the judgment in accordance with the foregoing.