**KREY PACKING COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 15545.

United States Court of Appeals
Eighth Circuit.

Dec. 19, 1956.

Rehearing Denied Jan. 16, 1957.

Henry C. Lowenhaupt, St. Louis, Mo. (Abraham Lowenhaupt and Lowenhaupt, Mattingly, Chasnoff, Freeman & Holland, St. Louis, Mo., were with him on the brief), for appellant.

Harry Marselli, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Walter Akerman, Jr., Attorneys, Dept. of Justice, Washington, D. C., and Harry Richards, U. S. Atty., St. Louis, Mo., were with him on the brief), for appellee.

Before WOODROUGH, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

The taxpayer, Krey Packing Company, brought this suit to recover income and excess profits taxes. From an adverse result plaintiff appeals to this court. The facts are not in dispute. Plaintiff is a Missouri corporation engaged in the operation of a slaughter house and processing plant in St. Louis, Missouri. It is

1

engaged principally in the processing of pork products. The question presented is the proper cost attributable to items of inventory purchased by plaintiff in replacement of items of inventory acquired under the LIFO method prescribed by 26 U.S.C.A. (I.R.C.1939) 22(d) (1), and which were involuntarily liquidated within the meaning of 26 U.S.C.A. (I.R.C.) 22 (d) (6) (B). Plaintiff asserts by its petition that the proper cost of such items is the cost of the items last purchased in the fiscal year which it asserts is the actual cost thereof, and defendant asserts that the proper cost is the cost of such items first purchased in the fiscal year.

Plaintiff kept its books and records on the accrual basis of accounting and filed its tax returns on the basis of a fiscal year commencing November 1st.

26 U.S.C.A. (I.R.C.1939) § 22(d) (1) provides for the elective or LIFO (last in-first out) method of inventory valuation:

"(d) Method of inventorying goods. (1) A taxpayer may use the following method (whether or not such method has been prescribed under subsection (c)) in inventorying goods specified in the application required under paragraph (2):

" (A) Inventory them at cost;

" (B) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof, and second, those acquired in the taxable year; and

" (C) Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their cost by the average cost method."

On January 15, 1942, plaintiff filed with the Collector of Internal Revenue its return for the preceding fiscal year and attached Form 970, thereby making application to use the LIFO method of valuing inventories of pork and pork products. Such application was granted. Plaintiff has used such method of inventorying goods in all taxable years subsequent to the fiscal year ending October 31, 1940.

During the fiscal years ending October 31, 1944 and October 31, 1945, plaintiff suffered involuntary liquidations of its inventories.[1] Plaintiff's failure to replace the goods was due directly and exclusively to the then prevailing war conditions beyond the control of the plaintiff and to material shortages resulting from priorities or allocations. The inventories so involuntarily liquidated were largely replaced in the fiscal years ending October 31, 1946, 1947 and 1948. Plaintiff contends that the proper cost attributable to items of inventory purchased in replacement of the items involuntarily liquidated during the fiscal years 1944 and 1945 is represented by the cost of the items last purchased in the respective years of replacement. A substantial tax benefit would result if plaintiff is correct.

Defendant contends that the proper cost attributable to items of inventory purchased by plaintiff in replace-

---

1. 26 U.S.C.A. § 22(d) (6) (B) provides: "Definition of involuntary liquidation. The term 'involuntary liquidation', as used in this paragraph, means the sale or other disposition of goods inventoried under the method described in this subsection, either voluntary or involuntary, coupled with a failure on the part of the taxpayer to purchase, manufacture, or otherwise produce and have on hand at the close of the taxable year in which such sale or other disposition occurred such goods as would, if on hand at the close of such taxable year, be subject to the application of the provisions of this subsection, if such failure on the part of the taxpayer is due, directly and exclusively, (i) to enemy capture or control of sources of limited foreign supply; (ii) to shipping or other transportation shortages; (iii) to material shortages resulting from priorities or allocations; (iv) to labor shortages; or (v) to other prevailing war conditions beyond the control of the taxpayer."

ment of LIFO inventory items involuntarily liquidated during the fiscal years of 1944 and 1945 is represented by the cost of such items first purchased in the order of acquisition in the respective years of replacement. If the latter view prevails, the District Court committed no error in holding for the defendant, and this appeal should be affirmed. The question presented on this appeal, then, is whether the District Court was correct in holding that the cost of items of inventory purchased by a taxpayer using the LIFO method of valuing inventory provided by Section 22(d) (1) of the 1939 Code in replacement of inventory involuntarily liquidated within the meaning of Section 22(d) (6) was properly determined by reference to the cost of the items of inventory purchased during the respective years of replacement in the order of their acquisition and not by reference to the cost of the goods last acquired in such years.

Prior to the passage of Section 22(d) (1), which provided for the LIFO method of inventory valuation, the usual way of determining inventory cost was on the first-in, first-out basis; that is, goods on hand were deemed to be those most recently purchased. Under this method and during a period of rising prices, large profits would be shown because goods which had actually been purchased at low price levels were being sold at much higher prices, but at the same time inventories would have to be replenished at the prevailing high prices. Lower profits or losses would be shown on a declining market. In order to avoid great fluctuations in income during such unstable periods, Congress passed Section 22(d) whereby a taxpayer could apply for and receive permission to use the valuation method therein provided. After permission had been received, a taxpayer had to continuously use the method thereafter in all subsequent years, unless he applied for and received permission to change to a different method. No such request was made here. Under ordinary circumstances users of the LIFO method were able to replace their inventories at current prices. During the war years, however, difficulty was experienced where inventories were involuntarily liquidated and taxpayers were unable to replace them at the then prevailing prices. Taxpayers were being forced to involuntarily liquidate low cost inventories at a time when it was impossible to replace them. The result was a greater tax burden than was contemplated by the Congress in providing for the use of the LIFO method of inventory valuation. Accordingly, in 1942 Congress was moved to grant relief from the tax consequences of involuntary liquidation by passing Section 22(d) (6), which provides, insofar as it may be pertinent herein, as follows:

"(6) *Involuntary liquidation and replacement of inventory.*

"(A) *Adjustment of net income and resulting tax.* If, for any taxable year beginning after December 31, 1940, and prior to January 1, 1948, the closing inventory of a taxpayer inventorying goods under the method provided in this subsection reflects a decrease from the opening inventory of such goods for such year, * * * and if the closing inventory of a subsequent taxable year, ending prior to January 1, 1951, reflects a replacement, in whole or in part, of the goods so previously liquidated, the net income of the taxpayer otherwise determined for the year of such involuntary liquidation shall be adjusted as follows:

\* \* \* \* \* \*

"(ii) Decreased by an amount equal to the excess, if any, of the aggregate replacement cost of such goods over the aggregate cost thereof reflected in the opening inventory of the year of the involuntary liquidation.

\* \* \* \* \* \*

"(C) *Replacements.* If, in the case of any taxpayer subject to the provisions of subparagraph (A), the closing inventory of the taxpayer for a taxable year, subsequent to the year of involuntary liquidation but

prior to the complete replacement of the goods so liquidated, reflects an increase over the opening inventory of such goods for the taxable year, the goods reflecting such increase shall be considered, in the order of their acquisition, as having been acquired in replacement of the goods most recently liquidated (whether or not in a year of involuntary liquidation) and not previously replaced, and if the liquidation was an involuntary liquidation shall be taken into purchases and included in the closing inventory of the taxpayer for the year of replacement at the inventory cost basis of the goods replaced." 26 U.S.C.A. (I.R.C.1939) § 22(d) (6) (A) and (C).

This 1942 amendment was applicable only to taxpayers " * * * inventorying goods under the method provided in this subsection * * * "; in other words, only to those taxpayers using the LIFO method of valuation. If a taxpayer elected to have the provisions of the 1942 amendment apply to his situation and he replaced inventories, involuntarily liquidated, at higher prices, he received an adjustment on his net income for the year of such involuntary liquidation in that it would be "(ii) Decreased by an amount equal to the excess, if any, of the aggregate replacement cost of such goods over the aggregate cost thereof reflected in the opening inventory of the year of the involuntary liquidation." 26 U.S.C. A. (I.R.C.1939) § 22(d) (6) (A) (ii).

Taxpayer here, however, would farther than the strict provisions of the 1942 amendment allow, in that it argues that under the 1942 amendment it should be allowed to abandon the LIFO method and use as a base the cost of goods last purchased in the replacement years because it claims the actual replacement cost and not the fictional LIFO cost should be the basis of computation. We find no justification for such interpretation of the 1942 amendment. The statute specifically provides that once the LIFO method is used it " * * * shall be used in all subsequent taxable years * * * ". 26 U.S.C.A. (I.R.C.1939) § 22(d) (5). Doubtless plaintiff would concede the obvious meaning of this statute compelling continuance of LIFO once adopted but contends this to be beside the point since it claims the 1942 amendment provides an escape from the use of it. If Congress had so intended by the amendment that users of the LIFO method could abandon such method insofar as the years of involuntary liquidation were concerned, it would have said so.[2]

2. The best expression of Congressional intent, when available, is from the Congress itself. In this connection, the Senate Finance Committee Report states (pp. 43–44, 82):

"Relief for Taxpayers Employing Last-in First-out Method of Inventory Valuation in Event of Forced Inventory Liquidation.

"Your committee amendment provides that if the taxpayer using the last-in first-out method of inventory valuation satisfactorily establishes the involuntary nature of his inventory liquidation, and if he replaces such units at least by the end of the third year after cessation of hostilities, his taxable income should be redetermined for such year or years of involuntary liquidation. His taxable income in such year or years would be reduced or increased, depending on whether the replacement cost was greater or less than the cost of the liquidated inventory units. In other words, the taxpayer is treated as if subsequent replacements of involuntarily liquidated inventory units had been made in the year of liquidation.

*   *   *   *   *

"Section 119. Last-In, First-Out Inventory.

"In this new section of the bill your committee proposes to afford to taxpayers using the elective inventory method authorized by section 22(d) of the Code a measure of relief from the consequences of the involuntary liquidation of their base stock inventory resulting from prevailing war conditions. * * * "

There is nothing here that indicates LIFO may be abandoned. To the contrary, it would seem that the amendment was meant to correlate relief with continued usage of LIFO. The relief contemplated is set out in Section 22(d) (6) (A) (ii) without hint that such relief is to be arrived at any other way than through use of the LIFO method.

We believe that Congress intended the provisions of Section 22(d) (6) relating to involuntary liquidation and replacement of inventory to operate in a manner consistent with the use by the taxpayer of the LIFO method in the replacement years. It is significant that the section referred to is applicable only to LIFO users and it therefore seems clear to us that if Congress had intended to relieve LIFO users from the statutorily imposed consistency in its use, heretofore referred to, it would have made special provision therefor in the amendment. By Section 22(d) (6) Congress provided relief in the form of credits against net income for the years of involuntary liquidation. It did not provide for a change in the method of valuation of inventories and that we cannot read into the statute.

We find, then, this situation: Plaintiff voluntarily elected to use the LIFO method in 1942, it apparently being beneficial for it so to do under the circumstances then existing. It received the necessary permission to use LIFO. In other words, it went on a fictional as opposed to an actual method of evaluating inventory. Plaintiff now seeks to change its method of inventory valuation insofar as replacement of involuntarily liquidated inventories is concerned, even though it was using the LIFO method during the years of involuntary liquidation and continues to use the LIFO method and at no time has ever applied for and received permission to change such method. We find nothing in the 1942 amendment applying to replacements of involuntarily liquidated inventories which justifies plaintiff's interpretation thereof. Plaintiff here fails to overcome the burden placed on it by " * * * the now familiar rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348; Deputy v. Dupont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416." Interstate Transit Lines v. Com-missioner of Internal Revenue, 1943, 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L. Ed. 1607. We concur with the District Judge's opinion, Krey Packing Co. v. United States, D.C., 138 F.Supp. 109.

Affirmed.