## MAY DEPARTMENT STORES COMPANY *v.* STATE TAX COMMISSION OF MARYLAND

[No. 213, October Term, 1956.]

*Decided June 6, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and KINTNER, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*Morton E. Rome,* with whom were *Rome & Rome* on the brief, for the appellant.

*Theodore C. Waters, Jr., Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The May Department Stores Company (hereinafter called "May") appeals from a decree of the Circuit Court of Baltimore City, which affirmed the assessment made by the State Tax Commission on the stock in business of May for the purposes of the Maryland tangible personal property tax for the year 1955. By this assessment, the Commission refused to accept what is called the LIFO method of calculating the fair average value of the tangible personal property belonging to the appellant.

The appellant, a New York corporation, owns and operates a large department store in Baltimore City. The merchandise it buys for resale to the consuming public comprises many thousands of different items, and is turned over five or six times a year. The company makes every effort to sell old goods first because styles, fashions and buying habits change from time to time, and it is good business to keep the newly purchased items in stock. Dollarwise, sixty-five per cent of appellant's merchandise is sold within six months after purchase; and an additional fifteen to twenty per cent is sold within a year after purchase, and not more than fifteen to twenty per cent of the merchandise is more than a year old.

The appellant takes a physical inventory once a year at the sales prices, giving effect to any mark-downs. From these prices, it deducts the initial average mark-up of the respective departments in the store, which reflects fairly accurately the actual cost of the merchandise, except as to goods which have been marked down; with respect to the latter, it applies the current or market value.

The very nature of appellant's business makes it virtually impossible to identify the multitude of items purchased so as to account for their cost; and the State Tax Commission does not insist upon such identification. Thus, as a practical matter accounting methods are resorted to, to determine the cost of May's merchandise in order to develop the fair average

value thereof under the cost or market value rule. May's sole contention in this appeal is that it should be permitted to calculate the cost value of its inventory for the purposes of Maryland tangible personal property taxes by means of an accounting method known as LIFO (last in, first out). It is conceded that the appellant is permitted to employ the LIFO method for the purposes of State and Federal income taxes.

There are two principal accounting techniques designed to reconstruct the cost of merchandise of this nature, FIFO (first in, first out), and LIFO (last in, first out). FIFO proceeds on the premise that the first goods purchased are the first goods sold. LIFO, on the other hand, proceeds on the assumption that the last goods purchased are the first goods sold; or, to put it another way, that the merchandise remaining in the inventory is that which was first purchased. *Hutzler Bros. Co. v. Commissioner*, 8 T. C. 14 (1947); *Basse v. Commissioner*, 10 T. C. 328 (1948); *Dubuque Packing Co. v. United States*, 126 F. Supp. 796 (U. S. D. C., Iowa-1954), aff'd 233 F. 2d 453 (1956).

The difference between the two can partly be shown by the following illustration. Let us assume that on January 1, 1956, the appellant had no men's white shirts in its inventory. On January 2, 1956, it purchases 1,000 white shirts at $2.00 each, and on February 15, 1956, it purchases 1,000 more of the same shirts for $2.25 each. On March 1, 1956, it sells 1,000 shirts, and the remaining 1,000 shirts remain in inventory. No one knows, actually, whether the $2.00 shirts were sold, or the $2.25 shirts were sold, and it is impossible to identify the 1,000 shirts remaining in inventory as to cost. Because the actual cost of the articles remaining on hand cannot be ascertained, their cost can be reconstructed only, by means of accounting methods. Under the LIFO method, it is assumed that the shirts in inventory are the $2.00 shirts; thus, the taxpayer's total inventory value of these shirts is $2,000. Under the FIFO method, it is assumed that the $2.25 shirts remain in inventory; thus, the taxpayer's inventory valuation for the 1,000 shirts is $2,250.

We shall say no more at this time concerning LIFO [1] because we shall later quote at length from the opinion of the Commission, wherein is given a splendid exposition of this accounting system.

The sole question for us to determine is whether the refusal by the Commission to accept the LIFO method of calculating the fair average value of the tangible personal property of the appellant for the twelve months preceding the date of finality was unlawful, unreasonable or against the substantial weight of the evidence. Art. 81, sec. 255 (b), Maryland Code (1951).

We now quote from the opinion of the Commission:

"The question involved in this case is whether a value of 'stock in business', or inventory, arrived at by what is known as the LIFO ('Last In, First Out') method, is acceptable for purposes of the tax provided in Article 81, Section 14 of the 1951 Maryland Code. The relevant portion of this Section reads as follows:

" '14. The stock in business of every person, firm or corporation engaged in any manufacturing or commercial business in this State shall be valued and assessed to the owner thereof on the date of finality at its fair average value for the twelve months preceding the date of finality, * * *'

"The taxpayer is a large department store in Baltimore City whose merchandise comprises many thousands of different items. Since 1941 it has maintained its inventory records in accordance with the LIFO method. This is a complicated accounting system designed to give effect to the assumed

---

1. For other cases that discuss these accounting methods, see *Krey Packing Co. v. U. S.*, 239 F. 2d 1; *R. H. Macy & Co. v. U. S.*, 148 F. Supp. 377. See also *LIFO Inventories and Corporate Surplus Accumulations as Affected by Inflation*, 59 Dickinson Law Rev. 217; *LIFO for the Department Store*, 27 National Income Tax Magazine 407-426; *The Retail Inventory Method of LIFO*, by Professor Mc-Nair.

premise that the items last bought were first sold, and that consequently the constant inventory, to the extent that it is no greater than the original or initial inventory, is held by the taxpayer at the original or initial cost. In a constantly rising market, the obvious tax advantages of such a system of accounting are quite apparent.

"However, before applying the adjustments required by the LIFO method to achieve the theoretical result above set out, the taxpayer first determines the current or actual cost of its inventory by normal and conventional methods, as follows: (1) It takes its physical inventory annually at the sales prices, giving effect at that time to any mark-downs; and (2) from these prices, it deducts the initial average mark-up of the respective departments, thereby reflecting fairly accurately the actual cost, except as to merchandise which has been marked down; and with respect to the latter, the current or market value.

"Up to this point, the values thus arrived at can be said to represent the fair value of the inventory of the taxpayer in that either the actual cost, or the market value, forms the basis for these computations.

"For income tax purposes, or for other reasons that the taxpayer may deem advisable, certain adjustments are then made to the inventory figures of the respective departments, in order to reconstruct a hypothetical original cost as of 1941 for the items *now* constituting the said inventories. This is done by applying to the said departmental inventories, various indices, the year 1941 being represented by 100, and each of the subsequent years by a higher index figure in accordance with average price trends for the respective groups of merchandise or departments of the business, as found by the Federal Bureau of Labor Statistics. It is unnecessary for our purposes to detail here the mechanics of this method. Conceding arguendo the validity of the indices

used, the result is, nevertheless, wholly artificial. This is evident from the following: (1) the Comptroller of the taxpayer testified that, dollarwise, 65% of its merchandise is sold within six months after purchase; that an additional 15 to 20% is sold within a year after purchase; and that no more than 15 to 20% might have an age of over a year; (2) department stores like the May Company have a turnover of at least 5 or 6 times annually; and (3) the items of merchandise, constituting the inventory in 1954, can only in rare cases be the same in composition, styling and functional efficiency as similar items purchased in 1941.

"To claim, therefore, that a 1941 *cost,* even if it could be found by the methods used, should be accepted as establishing the average value of the inventory 'for the 12 months preceding the date of finality', is to do violence to the language as well as the intent of the statute.

"The contention is made by the taxpayer that the LIFO method has received official approval. It is accepted by the Bureau of Internal Revenue of the Federal Government, and by the Income Tax Division of the State of Maryland, and it is contended that a consistent policy should be followed at least by all Maryland taxing authorities. Consistency is desirable unless such consistency negates the purposes sought to be served. In calculating inventory for income tax purposes, the fair current value is not too important. Income taxes in this taxpayer's business accrue as a result of profits from sales and/or increased value of inventory. To the extent that items of inventory may be under-valued, the additional profit realized from the sale of said items compensates for such under-valuation. Further, under-valuation in any one year is generally recouped when the items so under-valued are sold, whether the sale be made the next year or five years thereafter. Assuming the same rate of taxation, there is ultimately

no loss in the income tax paid by the taxpayer, particularly to the State. The situation with respect to a tax on inventory, however, is not the same. Each year's inventory is a separate, isolated period in time, unrelated taxwise to the inventory of any other period. The loss of taxes resulting from an under-valuation in any one year can never be recouped. Therefore, that method of computation, which reflects the fair and reasonable value of the inventory during the taxable year, is the only one that can be acceptable under the law.

"Counsel for the taxpayer has urged very strongly that the Commission accepts for the purposes of inventory valuation either cost or market, whichever is lower; that it is physically impossible to determine whether the item being sold is one which was purchased most recently at the highest cost, or most remote at the lowest cost; that, therefore, any approved accounting system which presumably reflects a lower earlier cost still comes within that rule of the Commission. The answer to that argument is that the rule of the Commission was never intended to be applied to costs, even actual and not synthetically reconstructed, resurrected from a distant past. Cost or market, whichever is lower, is a fair indication of the reasonable value of inventory provided that either the cost or the market value is established as of recent date. It would be fair and reasonable to assume that something bought at a certain price within six months was representative of the current fair value of the item. It is unreasonable, however, to adopt the cost of this item several years ago (assuming even that it can be properly established by the LIFO method) as representative of its fair value in the current taxable year. It would be equally valid to argue that the market value of years ago should properly constitute the fair value today. The point is that the law requires that the 'stock in business' be valued at its *fair aver-*

*age value for the 12 months preceding the date of finality.* Any accounting method, no matter by whom else accepted or approved, which does not produce the result which the law demands, as above quoted, is inadmissible for valuing inventory for the purposes of the tax imposed by Art. 81, Sec. 14. * * *".

We think the facts stated in this opinion are fully supported by the evidence; that it sets forth and answers with clarity and precision all of the arguments presented by the appellant in this Court; and that it clearly shows the action of the Commission was neither unlawful nor unreasonable.

*Decree affirmed, with costs.*