# STATE DEPARTMENT OF ASSESSMENTS AND TAXATION *v.* GREYHOUND COMPUTER CORPORATION ET AL.

[No. 205, September Term, 1973.]

*Decided May 7, 1974.*

576

*Motion for rehearing filed June 6 and 10, 1974; denied June 19, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*K. Donald Proctor, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*James P. Garland,* with whom were *Stephen D. Langhoff* and *Semmes, Bowen & Semmes* on the brief, for appellee Xerox Corporation. *George W. Liebmann,* with whom were *Shale D. Stiller, Lawrence F. Rodowsky, William J. Stetter* and *Edward H. Schmitt* on the brief, for appellee Sperry Rand Corporation. *Marvin J. Garbis,* with whom were *Allen L. Schwait* and *Garbis & Schwait* and *Jerry M. Hamovit, Joel F. Silver* and *Melrod, Redman & Gartlan* on the brief, for appellee Greyhound Computer Corporation. Submitted on brief by *James P. Garland, Stephen D. Langhoff* and *Semmes, Bowen & Semmes* for appellee Xerox Data Systems, Inc.

MURPHY, C. J., delivered the opinion of the Court.

Appellee Xerox Corporation manufactures duplicating equipment and appellees Xerox Data Systems, Inc. and

Sperry Rand Corporation manufacture data processing equipment; each manufacturer leases the equipment to its customers. Appellees LMC Leasing Corporation and Greyhound Computer Corporation are "non-manufacturers" who purchase and thereafter lease data processing equipment to their customers. For a number of years prior to the tax year 1970, the State Department of Assessments and Taxation (the Department) had assessed the equipment of the appellees on the basis of the lesser of its "cost to the taxpayer," or its market value (if the taxpayer could demonstrate that market value was less than the original cost of acquisition), less an allowance for depreciation. Thus the property manufactured and leased by Xerox, Xerox Data and Sperry Rand was assessed, in years prior to 1970, at its cost of manufacture while like property purchased and leased by LMC and Greyhound was assessed on the higher valuation basis of its purchase price.[1]

Consistent with this long-standing assessment practice, the Department, for the 1969 tax year, assessed data processing equipment owned by the Boothe Computer Corporation, which Boothe had purchased from a lessee of the IBM Corporation and had thereafter leased to its customers, on the basis of its purchase price. Boothe protested the assessment in October of 1969, maintaining that the "cost to the taxpayer" basis of assessment resulted in nonuniform assessments of identical property in that the assessment of its equipment, based on its purchase price, was five times higher than the assessment of identical equipment owned by IBM — a manufacturer of data processing equipment who leased it to its customers and who was assessed on the lower basis of its cost of manufacture.

---

1. Tangible personal property located in this State is subject to taxation in accordance with the provisions of Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 8 (2) *et seq.* Taxable personal property is required to be assessed annually (§ 14 (c)). The tax year is the period which starts July 1 in each year and ends on the following June 30 (§ 29A (b)). The "date of finality" is January 1 (§ 29A (a)); that date is "the date as of which assessments become final for the taxable year next following, subject only to correction as herein authorized . . . (§ 2 (20))." Personal property tax returns are required to be filed not later than April 15 (§ 251). The Department thereafter levies its assessment on the personal property reported in the return.

Pending decision of the issue presented by Boothe's protest, the Department, prior to January 1, 1970, instructed its assessors not to levy assessments for the 1970 tax year on equipment leased by manufacturers; it reasoned that if Boothe's position was ultimately upheld, the proper method to achieve uniformity would be to increase the assessment of Boothe's competitors — the "manufacturer-lessors." On January 23, 1970, following a hearing before the Department on Boothe's protest, Boothe's assessment was finalized and it appealed to the Maryland Tax Court. That court, on July 16, 1970, concluded that "the practice of the Department in assessing leased equipment owned by a manufacturer-lessor at manufacturer's cost, while assessing the same equipment owned by a nonmanufacturer-lessor at the purchase price is intentional, arbitrary and systematic"; [and that the Department's action] "violates the requirement of the Maryland Constitution, Article 15 of the Declaration of Rights, that all taxes shall be uniform within each class, and also denied to the Petitioner the equal protection guaranteed by the 14th Amendment to the United States Constitution." The Tax Court held that Boothe was "entitled to have its property assessed on the same basis as that of similar property in the same subclassification *i.e.*, at manufacturer's cost."

Immediately following the Tax Court's decision in *Boothe*, the Department determined that for the 1970 tax year all personal property leased by its manufacturer would be assessed at the selling price which the manufacturer would have charged for that equipment at the time its leases were consummated, less an allowance for depreciation. After reviewing the personal property tax returns of thousands of corporations on record, the Department sent letters in early September of 1970 to those corporations which it had determined might lease property which they manufactured. The letter briefly summarized the decision in *Boothe* and then stated:

> ". . . in order to obtain uniformity of assessments, that beginning with the tax year 1970, that such manufactured property as leased by a

> manufacturer shall be assessed on the same basis as if said property had been sold to the lessee. By this décision then, manufactured property being leased by a manufacturer will no longer be assessed on the basis of cost to the manufacturer, but rather on the basis of what the purchaser of said property would have paid in the year the lease was consummated."

The letter concluded with a request that "[i]f your corporation is leasing property which it manufactures, you are to furnish a new listing of all such leased property at the cost it would have charged said lessee in the year the lease contract was made."

Xerox, Xerox Data and Sperry Rand received such letters, supplied the information under protest, and the equipment which they manufactured and leased was assessed on the basis of its selling price, less an appropriate allowance for depreciation.[2] The Department continued its practice for the tax year 1970 of assessing personal property which had been purchased and leased, including that of Greyhound and LMC, on the basis of its purchase price, less depreciation.

The appellees unsuccessfully protested their 1970 assessments and each thereafter appealed to the Maryland Tax Court where the cases were consolidated for a hearing on common issues. The Tax Court held that the Department, in instituting a new standard of valuation based on "selling price" for equipment manufactured and leased by manufacturers, while applying the established standard based on cost to the taxpayer for other personal property, had violated Article 15 of the Maryland Declaration of Rights and the Equal Protection clause of the Fourteenth Amendment of the United States Constitution by creating an unauthorized subclass of personal property and assessing property within the same subclass in a nonuniform manner.

---

2. Xerox maintained that it did not have selling prices for its leased equipment. By stipulation, it was agreed that selling prices would be computed on the basis of capitalized rental income.

The Department has appealed from the order of the Tax Court, remanding the cases for reassessments for the tax year 1970 "at [manufacturer's] cost less depreciation or market value, whichever is lower."

(1)

Article 15 of the Maryland Declaration of Rights provides in pertinent part:

".... [T]he General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; . . . ."

Consistent with this constitutional mandate, the Legislature, by Chapter 73 of the Acts of 1958, made provision for the separate classification of real and personal property and for the sub-classification of personal property for assessment purposes. That Act, codified as Maryland Code (1957, 1969 Repl. Vol.), Article 81, §§ 14, 15, and 23 provided in 1970 as follows:

"§ 14 (a) *Classification.* — Real and personal property shall be separately classified, and personal property separately subclassified for assessment purposes. The following shall be separately subclassified for the purposes of personal property assessments:

(1) Stock in business.
(2) Distilled spirits.
(3) All other personal property directed in this article to be assessed.

"(b) *Valuation.* — Except as hereinafter provided:

(1) All real property directed in this article to be assessed, shall be assessed at the full cash value thereof on the date of finality. The term full cash value as used in this subsection shall mean current value less an allowance for inflation, if in fact inflation exists.

(2) All personal property directed in this article to be assessed, shall be assessed at the full cash value thereof on the date of finality. The term full cash value as used in this subsection shall mean current value without any allowance for inflation."

Section 15 (a), pertaining to "stock in business," provided in 1970:

"(a) *Stock in business.*—The stock in business of every person, firm or corporation engaged in any manufacturing or commercial business in this State shall be valued and assessed to the owner thereof on the date of finality at its fair average value for the twelve months preceding the date of finality. The term fair average value as used in this section shall mean cost or market value, whichever is lower, without any allowance for inflation."

Section 23, pertaining to the assessment of "distilled spirits," provided in 1970 that:

". . . said spirits shall be valued and assessed at fair value. The term fair value as used in this section shall mean cost or market value, whichever is lower, without any allowance for inflation. . . ."

The Department contends that the appellees' property falls within the subclass "[a]ll other personal property directed in this article to be assessed." The Department claims that its long-standing practice has been to so classify

the appellees' property and that the assessment thereof, utilizing selling price and purchase price as methods of valuation, achieves the statutory mandate of assessment at "full cash value" on the date of finality, as required by § 14 (b) (2); and that all property within that subclass has been uniformly assessed upon that basis.

Xerox, Xerox Data and Sperry Rand contend, however, that the property falls within the class of "stock in business," requiring assessment at its cost of manufacture, to fulfill the mandate of § 15 (a) that all such property be assessed on the basis of "cost or market value, whichever is lower." They contend that even if their property is not "stock in business," but rather is assessable at "full cash value" under § 14 (b)(2), the term "full cash value" has been judicially and administratively recognized as meaning cost or market value, whichever is lower, requiring assessment of their property at its cost of manufacture. They urge that the Department, in assessing their property at its selling price, while assessing the property of others within the same subclass at its cost of acquisition, has violated the uniformity requirements of Article 15 of the Maryland Declaration of Rights and the Equal Protection clause of the Fourteenth Amendment and that the Department has illegally changed its standard of valuation without notice after the date of finality (specified in Article 81, § 29A (a) as January 1). It is also contended that the Department's assessment of the equipment manufactured and thereafter leased by the Bunker-Ramo Corporation at the cost of manufacture has established an administrative policy requiring the like assessment of the appellees' leased property. Greyhound and LMC contend that because the property of manufacturer-lessors must be assessed at its manufacturing cost, that same value must be attributed to their property for the purpose of assessing the identical equipment which they lease.

(2)

We find no merit in the appellees' contention that the property which they lease is "stock in business" within the contemplation of Article 81, § 14 (a)(1) and § 15 (a).

Section 8 (5) of Article 81 specifies, for purposes of assessment for personal property taxation, that stock in business of manufacturing or commercial businesses in this State shall be deemed permanently located in the county or city where such business is carried on. The Department claims that "stock in business," as that term is used in § 15 (a), applies only to goods held by a business at its place of business for sale, and not to goods which have left the taxpayer's possession and control and are being employed by the taxpayer's customer in the conduct of his business. The cases relied upon by the Department clearly tend to support this position. *See State Department of Assessments & Taxation v. Bendix Corp.*, 270 Md. 31, 310 A. 2d 43 (1973); *National Can Corp. v. State Tax Commission*, 220 Md. 418, 153 A. 2d 287 (1959); *Alban Tractor Co. v. State Tax Commission*, 219 Md. 593, 150 A. 2d 456 (1959); and *Hopkins v. Baker*, 78 Md. 363, 28 A. 284 (1894). That it has been the long-standing practice of the Department (to which we accord great weight) to consider leased equipment as depreciable assets and not as "stock in business" is abundantly clear from the record; indeed, none of the appellees has ever reported leased equipment on its return as "stock in business" or "inventory," the two terms being synonymous for purposes of personal property taxation, *National Can Corporation v. State Tax Commission*, *supra*, and *Alban Tractor Co. v. State Tax Commission*, *supra*. Referring to stock in business in *National Can*, we said that "[i]nventories are held for sale or resale in the hope and expectation of a quick turnover." 220 Md. at 434. Section 15 (a) provides that stock in business shall be assessed at its "fair average value for the twelve months preceding the date of finality." This provision, we think, manifests a legislative intent to measure the value of property held for "sale or resale," rather than consumption and a recognition that such value cannot be derived by assessing the property at its value on a single day. The value of the appellees' property, being of a nature of fixed assets, may be determined without resort to such a formula.

The appellees rely on several Massachusetts cases to

support their argument that property leased by a manufacturer or other lessor is properly to be considered as inventory or stock in business for purposes of personal property taxation.[3] And they contend that the Uniform Commercial Code, Article 95B, §§ 6-102 and 9-109, recognizes leased machinery as "stock in business" of the lessor, as does the Sales Tax Act, Article 81, § 324. We are not, however, persuaded by the Massachusetts authorities that leased equipment, not "held for sale or resale in the hope and expectation of a quick turnover" *(National Can Corp. v. State Tax Commission, supra)*, constitutes "stock in business" under § 15 (a). Nor do we think that the provisions of the Uniform Commercial Code or the Maryland Sales Tax Act, pertaining to stock in business, evidence a legislative intent to bring the equipment leased by the appellees within the ambit of the term "stock in business," as used for purposes of personal property taxation in § 15 (a). See *County of Hennepin v. Honeywell, Inc.*, Minn., 210 N.W.2d 38 (1973).

### (3)

The appellees' property, being neither "Stock in business" nor "Distilled spirits," necessarily falls within subclass § 14 (a)(3)—"All other personal property directed in this article to be assessed." As heretofore indicated, § 14 (b)(2) provides that such property "shall be assessed at the full cash value thereof on the date of finality," the term "full cash value" being defined in the subsection to mean "current value without any allowance for inflation." The Department maintains that "full cash value" means the "market value" of the property. We agree. In *Schley v. Montgomery County*, 106 Md. 407, 67 A. 250 (1907), our predecessors considered the validity of the State Tax Commission's assessment of corporate shares under what was then Article 81, § 159 of the Maryland Code. Although that section contained no specific direction as to the manner in which the value of the

---

**3.** Ultronic Systems Corp. v. Board of Assessors of Boston, 244 N.E.2d 318 (1969) and New England Mutual Life Insurance Co. v. City of Boston, 75 N.E.2d 505 (1947).

shares was to be ascertained, we held that Article 15 of the Maryland Declaration of Rights, which at that time required that taxation be according to the taxpayers' "actual worth," imposed a duty upon the Commission to assess the shares by a method that would reflect their "actual value." We stated, 106 Md. at 410, that "[t]he value of an article is ordinarily what it will bring at a fair sale in the market, unless it be of so special a nature that no market for it exists and then its intrinsic value must be ascertained by a consideration of its cost, nature, utility and other characteristics." Subsequent cases have relied on *Schley* to define the term "full cash value," as used in Article 81, § 14, to mean "market value" — what a willing purchaser would pay to a willing seller in the open market. *See Weil v. Supervisor of Assessments of Washington County,* 266 Md. 238, 292 A. 2d 68 (1972); *Bornstein v. State Tax Commission,* 227 Md. 331, 176 A. 2d 859 (1962); *Tax Commission v. Brandt Cabinet Works,* 202 Md. 533, 97 A. 2d 290 (1953); *Rogan v. County Commissioners of Calvert County,* 194 Md. 299, 71 A. 2d 47 (1950). We think that definition is consonant with the natural meaning of the term "full cash value"; indeed, the weight of authority from other jurisdictions is in accord with this definition, and it was established precedent at the time of the enactment of Art. 81, § 14 in 1958.[4]

Notwithstanding such precedent, the appellees contend that there is judicial, legislative and administrative authority for the proposition that "full cash value" means "cost or market value, whichever is lower," and that the assessment of their property must, therefore, be at the cost of manufacture. They argue that in *Sears, Roebuck & Co. v. State Tax Commission,* 214 Md. 550, 136 A. 2d 567 (1957) — a case involving the assessment of a purchasing retailer's stock in business — we approved of that standard as a

---

4. The decisions of other jurisdictions are in general agreement in interpreting the term full cash value in similar taxing statutes as market value. *See, e.g.,* California Portland Cement Co. v. State Bd. of Equalization, 67 Cal. 2d 578, 432 P. 2d 700, 63 Cal. Rptr. 5 (1967); McArthur Jersey Farm Dairy, Inc. v. Dade County, 240 So. 2d 844 (Fla. App. 1970); Board of Equalization of Bernalillo County v. Heights Real Estate Co., 74 N. M. 101, 391 P. 2d 328 (1964). 17A Words and Phrases, "Full Cash Value" (1958. 1973 Supp.).

proper method of determining the full cash value of *all* personal property. We held in *Sears* that under the then existing law, the assessment practice of the State Tax Commission of making a deduction from the "full cash value" of real estate in order to allow for the effects of inflation, but of refusing to make any such deduction from the "full cash value" of personal property consisting of stock in business, constituted an unconstitutional discrimination against the owner of such personal property violative of the uniformity provisions of Article 15 of the Maryland Declaration of Rights and the Equal Protection clause of the Fourteenth Amendment. At the time of the assessment involved in *Sears*, Article 81, § 14 provided that "[e]xcept as hereinafter provided, all property [both real and personal] directed in this article to be assessed shall be assessed at the full cash value thereof on the date of finality." The method then provided by statute for valuing stock in business required the assessment thereof "at its fair average value for the twelve months preceding the date of finality." (The "cost or market value, whichever is lower" standard of valuation for stock in business was not then part of the statute.) Referring to our holding in *May Stores v. State Tax Commission*, 213 Md. 570, 132 A. 2d 593 (1957), a case involving the proper method for calculating the fair average value of a purchasing retailer's stock in business, we said that, for purposes of inventory valuation under the statute, the standard of cost or market value, whichever is lower, provided a fair indication of the reasonable value of inventory, provided that either the cost or the market value was established as of recent date. We said that the words "fair average," as applied to stock in business, recognized the fact that the size of inventory fluctuates over the annual period and the value of the inventory should be based upon a representative amount and a representative price for the inventory, not according to the amount of stock on hand on the date of finality, but on the fair average for the twelve months preceding the date of finality. We said that fair average means an average typical of the amount and price of goods acquired over the twelve-month period. And we stated that there was no

substantial difference in meaning between "fair value" and "full cash value."

Both in *May Stores* and *Sears*, we were dealing with the valuation of inventories purchased by retailers, and it was in that context that we expressed the view that the standard of "cost or market value, whichever is lower" could properly be used to arrive at the reasonable or current value of inventory. We did not approve of that test to determine the "full cash value" of *all* personal property; our recognition of the appropriateness of the "cost or market value" test was limited to its use to determine the fair average value of inventory and does not compel us to further define or apply that test in the case at bar. Likewise, § 15 (a) of Article 81, which directs that stock in business be assessed at its fair average value, defined as "cost or market value, whichever is lower," evidences a legislative intent to apply that test only to inventory. That intent is clear from the statutory framework of Article 81. Section 14 (b)(2) provides that "[e]xcept as hereinafter provided," all personal property be assessed at its full cash value, defined as current value. Section 15 (a) then provides such an exception, stating that stock in business be assessed at its "fair average value," defined as cost or market value, whichever is lower. In *National Can Corp., supra,* we noted that the "cost or market" standard in § 15 (a) affords the owner of inventory a hedge against inflation not given to owners of other personal property. Had the Legislature intended that the standard of cost or market value, whichever is lower, was synonymous with, and would constitute the measure of full cash value for all personal property, there would have been no necessity to separately subclassify stock in business from other personal property, and no need to differentiate between the basis of valuation applicable to each subclass of property. In any event, since we have determined that the appellees' property does not constitute stock in business, we need not decide if the Legislature, in separately subclassifying stock in business and prescribing the cost or market test as the method of assessing that property, intended to depart from the test of full cash value, or interpret that test to decide

whether under that standard the appellees' property would have to be assessed at its cost of manufacture.[5]

Xerox, Xerox Data and Sperry Rand argue, however, that it has been the Department's long-standing administrative practice to assess "[a]ll other personal property" at its cost to the taxpayer, and that consequently their property must be assessed at its cost of manufacture under that standard. It is well settled that the unvarying construction of a law by the agency charged with its enforcement over a long period of time is entitled to great weight and should not be disregarded except for the strongest and most urgent reasons. *See Palm Oil Recovery, Inc. v. Comptroller of the Treasury*, 266 Md. 148, 291 A. 2d 681 (1972); *Frank J. Klein & Sons, Inc. v. Comptroller of the Treasury*, 233 Md. 490, 197 A. 2d 243 (1964). However, it is clear that such construction is not binding upon the Court and cannot override the plain meaning of the statute or extend its provisions beyond the clear import of the language employed. *See County Treasurer, Etc., For Caroline Co. v. State Tax Commission*, 219 Md. 652, 150 A. 2d 452 (1959); *Comptroller of Treasury v. M. E. Rockhill, Inc.*, 205 Md. 226, 107 A. 2d 93 (1954); *State Tax Commission v. Chesapeake & Potomac Telephone Co.*, 193 Md. 222, 66 A. 2d 477 (1949); *Rogan v. Baltimore & Ohio Railroad Co.*, 188 Md. 44, 52 A. 2d 261 (1947); *Bouse v. Hutzler*, 180 Md. 682, 26 A. 2d 767 (1942). In *Pierce & Hebner, Inc. v. State Tax Commission*, 194 Md. 254, 71 A. 2d 6 (1950), we rejected the argument of the State Tax Commission that its long-standing practice of excluding a federal excise tax imposed on distilled spirits in assessing their value should not be repudiated. We there held, at 262, that the administrative practice did not fulfill the statutory mandate to assess the property at its "full cash value" as the tax was "an essential element in the 'actual cash value' of the liquor assessed." We said:

"It is true that this Court has stated many times

---

5. We note that a serious constitutional question might arise if the Department were to construe § 15 (a) to authorize assessment of property held by its manufacturer for sale or resale at its cost of manufacture while assessing that of a purchaser of such goods at its purchase price.

that the unvarying construction of a statute for a long period of time should not be disregarded except for the most imperious reasons. . . . However, this Court has also frequently stated that even if there has been an unvarying practice we will not sanction a method of calculation which 'would tolerate an evasion of taxes'. *Bouse v. Hutzler,* 180 Md. 682, 687, 26 A. 2d 767, 141 A.L.R. 843. As said by this Court in the case of *Rogan et al. v. Baltimore & Ohio Railroad,* 188 Md. 44, at page 57, 52 A. 2d 261, at page 268, involving a tax against the Baltimore & Ohio Railroad Co. '* * * the railroad company was not given a vested right to a perpetual method of computation.' *Atkinson v. Sapperstein,* 191 Md. 301, 60 A. 2d 737, 741. We see no reason to allow a former error of the State Tax Commission to overcome what we deem to be the intended method of assessment and thereby allow an evasion of taxes."

The assessment of the property of Xerox, Xerox Data and Sperry Rand at its cost of manufacture does not comply with the statutory direction of assessment at "full cash value." While the Department may use any proper method of assessment, the result must be to arrive at the statutory requirement of "full cash value." *See Sears, Roebuck, supra; Seaboard Commercial Corp. v. State Tax Commission,* 181 Md. 234, 29 A. 2d 294 (1942).

(4)

The question remains, however, whether the Department has applied the standard of "full cash value" uniformly throughout the class "[a]ll other personal property" as required by § 14 (b)(2), Article 15 of the Declaration of Rights and the Equal Protection clause of the Fourteenth Amendment. The parties agree that Article 15 of the Declaration of Rights, directing that assessments within subclasses of property be uniform, requires that the same standard of value or economic yardstick must be used in making assessments within the same subclass. It is

contended that the Department, through its policy of assessing the property of "manufacturer-lessors" at its selling price, while assessing the property of "purchaser-lessors" at its cost, *i.e.,* purchase price, has created an unauthorized subclass of personal property and directed nonuniform assessments. It is argued that the Department has considered "appreciation" of the equipment of Xerox, Xerox Data and Sperry Rand attributable to "potential sales" but has not considered appreciation of property acquired by purchase. It has long been established that assessors have reasonable latitude in selecting any proper method of valuation that results in assessment at full cash value. *See Macht v. Dep't of Assessments,* 266 Md. 602, 296 A. 2d 162 (1972); *Sears, Roebuck & Co., supra; Seaboard Commercial Corp., supra.* Both methods employed by the Department — assessing property purchased and leased at its purchase price, and property manufactured and leased at its "selling price" — are calculated to fulfill the statutory mandate of assessment at full cash value.[6] The value of the property manufactured and leased by Xerox, Xerox Data and Sperry Rand due to "potential sales" reflects its market value — its value to them as consumers, and not manufacturers. The use of purchase price to determine the full cash value of property acquired by purchase likewise results in its assessment at market value. No new subclass of personal property has been created and no inequality or lack of uniformity inheres in the Department's method of assessment of these two groups.

---

6. That it has been the Department's admitted practice not to consider appreciation of personal property in determining its full cash value does not mean that it has, as a matter of policy, departed from the statutory standard of assessment at full cash value. The Department maintains that since tangible personal property being consumed through use — depreciable assets — will not ordinarily appreciate above original purchase cost or selling price, the practical administration of the tax laws reasonably permits utilization of the straight line or other accepted method of depreciation in arriving at full cash value. In the circumstances, we cannot say that the Department's action is unreasonable or violative of its statutory responsibility to levy assessments upon depreciable assets at full cash value. *See* New Departure Division of General Motors Corp. v. Town & City of Bristol, 25 Conn. Sup. 37, 195 A. 2d 770 (1963); Maytag Co. v. Partridge, 210 N.W.2d 584 (Iowa 1973); W. L. Harper Co. v. Peck, 161 Ohio St. 300, 118 N.E.2d 643 (1954).

It is further contended that the Department's lack of uniformity in assessing personal property within the subclass "[a]ll other personal property" is demonstrated by its assessment for the tax year 1970 of a number of manufacturer-lessors at the cost of manufacture. The record discloses that three manufacturer-lessors — Burroughs Corporation, Eastman Kodak Company, and Dennison Manufacturing Company — were inadvertently assessed on their leased equipment at the cost of manufacture for the 1970 tax year. In each instance, however, there was evidence indicating that the assessment was based on incomplete or inaccurate information provided on the corporations' tax returns; and the Department, upon discovering its error, reassessed each of them based on the selling price of its leased equipment.[7] The procedure utilized by the Department in its effort to locate and assess all manufacturer-lessors at selling price for the 1970 tax year was not, as appellees claim, so haphazard, arbitrary or capricious as to constitute a denial of due process of law.[8] Nor do we think, in the circumstances of this case, that the Department's failure to assess the property of these three manufacturer-lessors at selling price represents an intentional or systematic violation of Article 15 of the Declaration of Rights or of the Equal Protection clause of the Fourteenth Amendment. As we stated in *Weil v. Supervisor of Assessments, supra,* at pages 252-53, quoting from *Rogan v. County Commissioners of Calvert County, supra:*

---

7. Each corporation protested the reassessment and the Department ultimately ruled that because the erroneous assessments had been finalized, they could not be changed.

8. As heretofore indicated, the Department reviewed the personal property tax returns filed by all taxpayers in Maryland for the tax year 1970. Those returns required the taxpayer to state the nature of its business in Maryland and to file a schedule of property which it leased in this State. The Department thereby determined whether the corporation was manufacturing or leasing in Maryland. The Department has admitted that this method did not reveal those manufacturer-lessors who manufactured equipment outside of Maryland, but leased it in the State, and those whose returns were faulty or incomplete. The assessor's general knowledge of corporations doing business in Maryland was relied on to discern these manufacturer-lessors.

" 'The purpose of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States is to protect every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the provisions of a statute or by improper enforcement of a statute. Intentional and systematic undervaluation by assessors of other taxable property in the same class violates the constitutional right of a person taxed upon the full value of his property. However, mere errors of judgment on the part of State or County officials in making assessments will not support a claim of such discrimination. There must be something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officials and the validity of their actions will be presumed.' "

\* \* \*

" 'We accept the rule, as adopted in other States, that the assessment of the property of others at a lower proportion of its value than that of a complaining taxpayer, which is not assessed at more than its fair cash value, does not make the tax on the latter invalid, unless the assessment was fraudulently made.' "

(5)

A more serious problem is posed by the Department's assessment of equipment within the class "[a]ll other personal property," which it determined was manufactured but not leased by the taxpayer. Of course, any method systematically designed and intentionally applied to assess such property at a standard other than "full cash value" would violate § 14 (b)(2) and the constitutional protections invoked by the appellees. The Department's assessment of certain of the equipment manufactured by the Bunker-Ramo Corporation constitutes the only concrete evidence developed in the record of its actual assessment of

such personal property. Bunker-Ramo manufactures stock quotation boards which it installs on the premises of its customers under so-called "service agreements." The Department concluded that this equipment was used to furnish information to stockbrokers, and that because it remained under Bunker-Ramo's control, it had not been leased, even though located on the premises of its customers. It, therefore, assessed this equipment at its cost of manufacture. Other equipment manufactured by Bunker-Ramo, which it leased, was assessed at selling price. The Department maintains that its assessment of Bunker-Ramo's stock quotation equipment held under "service agreements" is "unique" and that if the assessment of this property was in error, it was an "error of judgment" not reaching constitutional dimension.

While it is clear from the record that as to Bunker-Ramo's stock quotation equipment the Department concluded that that corporation was not a manufacturer-lessor, the reasons underlying this determination are not at all clear. Whether this equipment was leased or not, the valuation basis applicable to it under § 14 (b)(2) was "full cash value" (unless, of course, the Department considered that the equipment was stock in business). The Department does not argue that the cost of manufacture arrives at the market value of that property even under the allegedly "unique" facts surrounding Bunker-Ramo's operations. Consequently, if that assessment reflects and is representative of an *intentional* and *systematic* policy of the Department to assess all property within the subclass "[a]ll other personal property" that is manufactured but not leased at its cost of manufacture, the Department's method of assessment could appear to violate the statutory direction to assess all such property at full cash value and the constitutional imperatives of Article 15 of the Declaration of Rights and the Equal Protection clause. In that event, it might not be said that assessments made pursuant to such a deliberately adopted system constituted mere errors in judgment since the challenged discrimination would plainly be the result of a plan of assessment which was nonetheless systematic

and intentional because of belief in its validity. *See Cumberland Coal Co. v. Board of Revision*, 284 U. S. 23, 76 L. Ed. 146, 52 S. Ct. 48 (1931). The following testimony of John Rauh, the head of the Department's Foreign Corporation Division, is the only evidence in the record which directly bears on the Department's assessment of personal property manufactured but not leased:

"Question: Now, under the Department's regulation making power, has the Department, at any time, adopted a regulation stating that its interpretation of full cash value in regard to property owned by manufacturing lessors was something other than cost minus depreciation?

"Answer: No.

"Question: You have never adopted such a regulation?

"Answer: Shaking head negatively."

\* \* \*

"It wouldn't adopt such a regulation, because the law itself says that it shall be assessed at its full cash value, and this is our interpretation of full cash value.

"Question: As to any other group or class or type of taxpayer other than manufacturers of property leased to lessees located within the State of Maryland, have you applied any assessment criterion other than cost less depreciation?"

\* \* \*

"Answer: No.

"Question: So your only deviation from the general policy of applying cost was in the case of manufacturers who leased property in the State of Maryland?

"Answer: Yes."

The Department notes that there is no hard evidence in the record that the property of any other taxpayer, similarly situated with Bunker-Ramo, was assessed at its cost of manufacture.[9] In view of the state of the record before us, and the equivocal nature of Rauh's testimony on this vital point, we think the purposes of justice will be advanced by permitting further evidentiary proceedings in the Tax Court, pursuant to the provisions of Maryland Rule 871 a, to determine whether the Department's policy for the tax year 1970 of assessing the property of "manufacturer-lessors" at its full cash value was, or was not, applied to taxable tangible personal property manufactured but not leased by its owner. If the valuation basis is, in fact, the same for all such property — full cash value — Bunker-Ramo's assessment at cost of manufacture might possibly be viewed as a mere error in judgment, not requiring that the appellees' assessments be reduced to the same valuation level. *See Sears, Roebuck & Co. v. State Tax Commission, supra; National Can Corp. v. State Tax Commission, supra.*

### (6)

There is no merit in the argument of Xerox, Xerox Data, and Sperry Rand that the Department has changed the standard of valuation for their property after January 1, 1970, the date of finality for that tax year,[10] in violation of § 14 (b)(2), which requires that all personal property be assessed at its full cash value *on the date of finality*. They maintain that the Department did not change its policy of assessing their property at its cost to the taxpayer — *i.e.,*

---

9. Our holding that the Department's prior practice of assessing the appellees' property at its cost of manufacture does not require its continued assessment on that basis, provides a sufficient answer to Xerox's argument that the Department's assessment of the property of Bunker-Ramo, under service agreements, at its cost of manufacture, requires a like assessment of its property. Assuming that the facts surrounding the assessment are not unique and that the Department has set a policy of assessing such property at its cost of manufacture, such administrative construction cannot depart from the standard of full cash value.

10. *See* Article 81, § 29A (a) and note 1 *supra.*

manufacturing cost — until after the Tax Court rendered its decision in *Boothe*, on July 16, 1970, and that the Department, therefore, increased the value of their property long after the date on which such values were made binding for tax purposes by the statute. They further contend that the Department has thereby unconstitutionally imposed additional retroactive taxes upon them for that tax year.

Section 14 (b)(2) requires only that the value of property, subject to assessment, be determined on the date of finality of the tax year in question. The Department's assessment of the property of these manufacturer-lessors for the tax year 1970, on the date when such property was placed under lease, complies with the directive that such value be determined as of January 1 of that year. Indeed, the Department notes that under Article 81, § 251, the appellees were not required to file their tax returns for 1970 until April 15th of that year.[11] That statutory directive is manifestly inconsistent with the interpretation of § 14 (b)(2) urged by the appellees. Their reliance on *State Tax Commission v. Armco Steel Corporation*, 226 Md. 533, 174 A. 2d 327 (1961), to support that interpretation is also misplaced. In *Armco*, we held that Baltimore City could not subject to taxation, for the years 1958 and 1959, tangible personal property exempt from taxation under the terms of the ordinances in effect on the dates of finality for those years. We noted that "[p]roperty which was exempt on the date of finality is not subject to the tax for the ensuing taxable year." 226 Md. at 540. Our holding in *Armco* is consonant with our interpretation of § 14 (b)(2). The property involved in that case, as appellees admit, being exempt on the dates of finality, had *no value* for the purposes of taxation. Baltimore City could not, therefore, subsequently attribute value to that property not existing on the dates of finality by retroactively withdrawing those exemptions. The appellees' property, however, was not exempt from taxation, and had a market value on the date of finality. The full cash value of such property was

11. *See* note 1 *supra.*

determined as of that date in accord with the statutory directive and no unconstitutional retroactive tax was imposed; only the method of assessment was changed to comply with the statutory mandate to assess at full cash value.

> *Case remanded to the Maryland Tax Court without affirmance or reversal, pursuant to the provisions of Maryland Rule 871 a, for further proceedings in accordance with this opinion; costs to be paid one-half by the appellant and one-half by appellees.*